UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DAVID R. HAWKINSON,

                    Plaintiff,

          v.                                    Case No. 23-cv-634-pp

DEPARTMENT OF CORRECTIONS, *et al.*,

                    Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED
WITHOUT PREPAYING FILING FEE (DKT. NO. 2), GRANTING PLAINTIFF'S
MOTION FOR LEAVE TO FILE AMENDED COMPLAINT (DKT. NO. 13),
DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION (DKT. NO. 14), DENYING WITHOUT
PREJUDICE MOTION TO RECRUIT ATTORNEY (DKT. NO. 17) AND
SCREENING PROPOSED AMENDED COMPLAINT UNDER 28 U.S.C. §1915A**

David R. Hawkinson, who is incarcerated at Green Bay Correctional
Institution and representing himself, filed a complaint under 42 U.S.C. §1983,
alleging that the defendants violated his constitutional rights. This decision
resolves the plaintiff's motion for leave to proceed without prepaying the filing
fee, grants his motion for leave to file amended complaint, screens his proposed
amended complaint, denies his motions for temporary restraining order and
preliminary injunction and denies without prejudice his motion for
appointment of counsel.

**I.      Motion for Leave to Proceed without Prepaying the Filing Fee
         (Dkt. No. 2)**

The Prison Litigation Reform Act (PLRA) applies to this case because the
plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h).

1

The PLRA lets the court allow an incarcerated plaintiff to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On June 8, 2023, the court ordered the plaintiff to pay an initial partial filing fee of $18.78. Dkt. No. 7. The court received that fee on June 30, 2023. on July 5, 2023, the court received another payment of $18.78 from the plaintiff. The court has received a total of $37.56 from the plaintiff. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay remainder of the filing fee ($312.44) over time in the manner explained at the end of this order.

## II.    Procedural History

The plaintiff filed his complaint on May 19, 2023. Dkt. No. 1. Because he filed a motion to proceed without prepaying the filing fee, dkt. no. 2, the court ordered him to pay an initial partial filing fee, dkt. no. 7. The court received that fee on June 30, 2023. Five days later, the court received from the plaintiff an amended complaint, dkt. no. 12, and a motion for an extension of time to pay the initial partial filing fee, dkt. no. 12. Three weeks later, the court received from the plaintiff a motion for leave to file an amended complaint, dkt. no. 13; he attached to that motion a proposed amended complaint, dkt. no. 13-1. The court also received a motion for a temporary restraining order a motion for preliminary injunction. Dkt. No. 14.

2

On November 6, 2023, the court received from the plaintiff a motion to recruit counsel. Dkt. No. 17. The plaintiff attached to that motion two letters he wrote to lawyers, two letters from lawyers declining to represent him and a list of seven lawyers and their addresses. Dkt. No. 17-1.

## III. Motion for Leave to File Amended Complaint (Dkt. No. 13)

Federal Rule of Civil Procedure 15(a)(1) says that within twenty-one days after serving a complaint, a party may amend that complaint once without seeking the court's permission. The plaintiff's complaint has not yet been served (because the has not yet screened it and ordered it to be served), so the plaintiff did not need the court's permission to amend it (even though he'd amended it once before). The court will grant the plaintiff's motion for leave to file an amended complaint.

## IV. Screening the Amended Complaint

### A. Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case

Case 2:23-cv-00634-PP   Filed 11/13/23   Page 3 of 25   Document 19

under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cnty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.    The Plaintiff's Allegations

In his amended complaint, the plaintiff has sued: the Department of Corrections; the Bureau of Health Services; the State of Wisconsin; the United

4

States of America; Nurse Practitioner Virginia H. Trzbiatowski; Health Services Manager Hanna Utter; Registered Nurses D. Henning, R. Cotton, S. Bost, J. Kilmer, S. Garland, E. Baker and L. Yonash; "Inmate Complaint Examiner" A. DeGroot; L. Sorenson[1]; Unit Managers M. Tallier, J. Koehler, S. Cummings and J. Perttu; Recreation Leader T. Heuvelmans; Captain William Swiekatowski; and John/Jane Doe 1-35. Dkt. No. 13-1 at 1; ¶¶9-26.

The amended complaint includes a "Preliminary Statement" in which the plaintiff states that the defendants violated his Eighth Amendment rights "by wantonly and sadistically delaying and denying medical treatment for neck and back pain[,]" that he suffered greatly "the entire time" and that he suffered "irreversible damage to his nerves and will continue suffering for life." Dkt. No. 1 at ¶1. The plaintiff alleges that the defendants "manipulate[d] policies and procedures to make it appear like the plaintiff was receiving medical care[,]" "formed and participated in a committee (Special Needs Committee) whose sole purpose is to override doctors' orders 'in the interest of security'" and "manipulated policies and procedure to further delay the plaintiff's medical care by acting as if they were investigating claims made by [the plaintiff][,]" in violation of the Eighth and Fourteenth Amendments. Id. at ¶¶2-4.

In the "Allegation[s] of Fact" section of the amended complaint, the plaintiff alleges that he has exhausted his administrative remedies and that the Office of the Secretary affirmed that "waiting 10 months was unreasonable and

---

[1] The proposed amended complaint lists L. Sorenson twice. This appears to be an error.

5

it can only be assumed that another 7 months to receive treatment is even more unreasonable." Id. at ¶28. Defendant Virginia Trzbiatowski allegedly "intentionally disregarded a known objectively serious medical condition that posed an excessive risk to the plaintiff's health." Id. at ¶29. The plaintiff says that in December 2021, he completed injections at Aurora and "they" recommended that he follow up with his provider and repeat injections "in 30 days and then every 3 months as needed." Id. at ¶30. He allegedly was seen in May 2022 for an unrelated issue at which time he was not allowed to discuss his neck and back. Id. "Finally in October 2022, . . . Trzbiatowski referred [the plaintiff] to 'Pain Services' who has/had a contract with GBCI." Id. The plaintiff alleges that Previa Pain Services referred him to Bellin Health for an injection, but Bellin would not see him because too much time had elapsed since his last treatment and they wanted him to start the protocol all over. Id. at ¶31. Trzbiatowski allegedly twice failed to properly fill out the application papers for Bellin Health which further delayed the plaintiff's epidural steroid injection. Id. at ¶32.

The next part of the Facts section of the amended complaint describes in detail the efforts the plaintiff made to obtain treatment, beginning in January 2022. He alleges that on January 19, 2022, he filled out a "DOC 3035" stating: "I need help with my back. I am doing all the treatments I am able. Whatever is wrong needs to be treated as a whole. The pain is causing psychological problems. Why can't I get treatment?" Id. at ¶33. The next day, he received a

response from Nurse Henning that said he had an appointment with "ACP" on January 24, 2022. Id. The plaintiff says this appointment never happened. Id.

The plaintiff alleges that on February 3, 2022, he filled out a DOC 3035 stating: "I need help with my back. The T2-T3 area is killing me. The treatments on my neck are not working on the thoracic pain. HELP!" Id. at ¶34. Nurse Bost allegedly responded that the plaintiff had a pending appointment with his provider for his back pain. Id.

On March 18, 2022, the plaintiff allegedly submitted a DOC 3035 stating, "When am I due for another shot in my neck? The Pain is creeping Back, 5+ all the time with periods of 10. Short periods so far." Id. at ¶35. Nurse Kilmer allegedly responded that no neck injection had been ordered at that time. Id.

The plaintiff states that on June 2, 2022, he submitted a DOC 3035 stating, "Why did you change my Naproxen prescription? This was for the pain in my Arm shoulder and neck all of which will never heal, but it is getting worse. Please Refer to MRI of cervical spine." Id. at ¶36. Nurse Henning allegedly responded, "50/30 days. This was also changed to DOC pharmacy new standards. Please let HSU know if you need a sick call." Id. The plaintiff says, "still no appointment for neck and back." Id.

On July 18, 2022, the plaintiff allegedly submitted a DOC 3035 stating: "I need another shot in my neck nothing is helping again." Id. at ¶37. Nurse Henning responded, "ACP referral in place pending scheduling if you are in need of RN sick prior to this let HSU know." Id.

The plaintiff alleges that on August 5, 2022, he submitted a DOC 3035 stating: "I Do Not need a sick call, you already have MRI showing I have a condition that will never heal and will need constant treatment. If it is $7.50 you need, take it and send me for the epidural in my cervical spine." Id. at ¶38. Nurse Cotton allegedly responded that the provider had ordered a referral to Pain Services. Id.

On November 4, 2022, the plaintiff allegedly filled out a DOC 3035 asking why he had not received his epidural for pain. Id. at ¶39. He says that Nurse Kilmer responded, "Injection ordered and pending scheduling." Id.

The plaintiff states that on November 20, 2022, he submitted a DOC 3035 stating "I would like my TENS unit back, I feel like I am dying." Id. at ¶40. He says that Nurse Baker responded, "Tens unit ordered [sic] expired forward to special needs." Id.

On December 7, 2022, the plaintiff allegedly submitted a DOC 3035 stating, "I feel that hsu is intentionally delaying my epidural and this is causing me agonizing pain on a daily basis. This is causing depression and other mental problems. Why have I not received my epidural[?]" Id. at ¶41. Nurse Henning allegedly responded "Referral in place, pending scheduling. Appt scheduled to see ACP." Id.

The plaintiff says that on December 21, 2022, he submitted a "DOC 761" which stated,

> I am having a problem with my neck and back. It is causing me agonizing pain. As of the 22nd of December it will be one year since my last epidural. A shot I am supposed to get every three months. Every time I write HSU it is always the same answer, you have an

8

appointment coming up. In the meantime, it is getting worse. I have had to go on antidepressants because of the pain. Some days it is so bad all I do is go to the bathroom and eat. Please tell me what is going on, and why it is taking so long?

Id. at ¶42. Nurse Henning allegedly respond, "As of 12-5-2023 no more UTTER. We are at the mercy of outside provider schedules and have now switched to Prevea Pain Services." Id.

On December 25, 2022, the plaintiff allegedly filled out a DOC 3035 stating, "I want to go back on seizure medication I am having them more frequently because of the increased stress." Id. at ¶43. Nurses L. Yonash and E. Baker allegedly responded that the plaintiff "may discuss restarting [his] medication with [his] provider," that he had an appointment scheduled on January 26 with his ACP and that his next psychiatric appointment was in four to six weeks. Id.

The plaintiff states that on January 28, 2023, he filled out a DOC 3035 form stating, "When I Lay Down there is pain around T2-T3, T3-T4. My hands hurt. My right arm hurts. Right now it hurts to write this." Id. at ¶44. Nurse Baker allegedly responded that the plaintiff had a provider appointment on February 10, and asked if he needed to be seen sooner. Id.

On January 30, 2023, the plaintiff allegedly submitted a DOC 3035 form stating, "If you really have an appointment on 2/10 I could probably wait. If this is another imaginary appointment like the last five I should see someone sooner because its not going away." Id. at ¶45. The plaintiff allegedly received a response stating that he was scheduled to be seen on February 10, 2023 with Dr. Daughtry. Id.

The plaintiff alleges that he "has seen his new provider Dr. Daughtry on February 10, 2023 and has an appointment with Interventional Radiology for an injection." Id. at ¶51.

The plaintiff states that on March 8, 2023, he submitted a DOC 3035 stating, "I still have extreme pain in both arms, hands, and neck. I have not received my injection for pain. What is going on?" Id. at ¶46. The plaintiff allegedly received a response from Nurse Henning stating that he was scheduled for cervical MRI that month before his "ESI." Id.

On March 12, 2023, the plaintiff allegedly submitted a DOC 3035 stating, "Pain, Bad, HELP!" Id. at ¶47. He says that he received a response from Nurse Baker asking that he specify what he needed to be seen for and that "specifics help to schedule [him] appropriately." Id. That same day, an officer allegedly wrote on the plaintiff's behalf in a DOC 3035: "My hands not working appropriately my right arm is swelled up." Id. at ¶48. He allegedly received a response from Nurse Baker that he was scheduled to be seen in the HSU. Id.

The plaintiff alleges that as of May 2023, he had received "no treatment" for his lumbar spine, had to spend a weekend in bed and had to use a walker to get back and forth to meals and the bathroom. Id. at ¶52. He says the "total time elapsed from December [2021] when Aurora gave their recommendation until his next treatment was 17 months." Id. The plaintiff states that he "has received an injection as of April 29, 2023 and has considerably less pain in the neck, and arms." Id. at ¶58.

The plaintiff alleges that Trzbiatowski allowed the use of a "TENS unit," which he used to reduce pain, to expire. Id. at ¶50. He says that a second MRI was needed for Interventional Radiology and this MRI showed more damage to his cervical spine due to non-treatment. Id. at ¶53. According to the plaintiff, this damage and his pain could have been minimized, and Trzbiatowski "had it in her 'POWER' to help [him] and chose not to." Id.

The plaintiff alleges that Utter knew that Trzbiatowski mistreated patients and "instead of making an administrative decision to investigate [ ] Trzbiatowski, and help [the plaintiff], she chose to turn a blind eye to the violations and allow [the plaintiff] to suffer." Id. at ¶54. The plaintiff states that "[w]ith multiple lawsuits pending against [ ] Trzbiatowski any lay person would have known something was going on and attempted to assist in getting [the plaintiff] help with his suffering." Id. Instead, "Utter's only concern was to make it look as if her hands were tied and she bared [sic] no responsibility." Id. The plaintiff asserts that "[n]ot only did Hanna Utter actively participate with [ ] Trzbiatowski in blocking care for [the plaintiff], as an administrator she encouraged [ ] Trzbiatowski's behavior by administering a system where there are no checks and balances." Id.

The plaintiff alleges that the epidural steroid injection is intended to decrease inflammation which slows the body's response to rebuild damaged areas and reduces pain. Id. at ¶55. He states that not receiving this injection allowed the disease to wreak havoc on his spine and, to date, "there is no updated MRI on [the plaintiff's] Lumbar spine and he suffers new pain in his

thoracic spine." Id. The plaintiff alleges that he has suffered "extreme, avoidable pain for no penological reason at the hands of Virginia H. Trzbiatowski, Hanna Utter." Id. at ¶56. He says he must take psychotropic medication due to depression related to his pain. Id. at ¶57.

The plaintiff alleges that defendant DeGroot, as an investigator, had the "third chance" to stop the plaintiff's pain and suffering because he was provided "times and dates," but he "failed to protect a person who could not protect himself." Id. at ¶59. The plaintiff states that DeGroot "dismissed the complaint he knew should not have been dismissed. It took his superiors to investigate and change his dismissal to get the ball rolling in the right direction." Id. He asserts that DeGroot violated his Fourteenth Amendment right to due process by not thoroughly investigating the claims raised in his administrative complaint. Id. at ¶61.

The plaintiff alleges that defendants Utter, Baier, G. Trzebatowski,[2] Swiekatowski, Tallier, Koehler and Cummings "[p]articipated in a Committee whose only purpose is to deny medical needs of inmates." Id. at ¶62. He says this violates his rights under the Eighth and Fourteenth Amendments. Id.

---

[2] In the body of the complaint., the plaintiff includes "G. Trzebiatowski" as a defendant Dkt. No. 13-1 at ¶27. He says that while he believes the name is a typo of Virginia Trzebiatowski's name, he has included G. Trzebiatowski "until which time sufficient information of their identity is known to satisfy the court and this plaintiff for this litigation." Id. The plaintiff did not include G. Trzebiatowski in the caption of the complaint and the court usually considers as defendants only those parties whom the plaintiff includes in the complaint's caption. See Fed. R. Civ. P. 10(a). As described below, even if the plaintiff had included G. Trzebiatowski in the caption, he has not stated a claim against G. Trzebiatowski.

Case 2:23-cv-00634-PP   Filed 11/13/23   Page 12 of 25   Document 19

The plaintiff alleges that the Department of Corrections, the Bureau of Health Services, the State of Wisconsin and the United States of America "added to this risk, by providing a physician/nurse practitioner who does not meet minimum standards of competence or diligence or who cannot give adequate care because of an excessive caseload or inadequate facilities." Id. at ¶64.

The plaintiff claims that Virginia Trzbiatowski "knowingly and willingly delayed and denied [the plaintiff] medical treatment causing pain and suffering." Id. at ¶65. He claims that Utter, who "was contacted on several occasions and had a chance to stop these egregious acts," "had it in her power to allow [the plaintiff] to see another provider as [ ] Trzbiatowski's behavior was suspect," but Utter "chose to do nothing." Id. at ¶66. The plaintiff claims that DeGroot violated his Eighth and Fourteenth Amendment rights by completing an erroneous investigation and causing further delay and denial in the plaintiff's medical care. Id. at ¶67. The plaintiff claims that "[a]ll nurses and investigators name[d] and employers provided had a responsibility to stop Virginia H. Trzbiatowski from causing pain to [the plaintiff.]" Id. at ¶68. He says that instead, they turned a blind eye and allowed her to continue to deny him care. Id. at ¶69.

For relief, the plaintiff seeks a preliminary injunction to receive meaningful medical care that will stop or slow down damage and relieve pain. Id. at ¶70. He requests "all legally available remedies," that the defendants lose their licenses to practice medicine and damages. Id. at ¶¶71-74. The plaintiff

13

asks to reserve his ability to file for negligence in Wisconsin state court. Id. at ¶75.

C.     Analysis

Before turning to the substance of the plaintiff's allegations, the court will dismiss certain defendants against whom the law does not allow the plaintiff to proceed. In the section of the complaint where the plaintiff lists the defendants, he requests that each individual defendant be added as a John or Jane Doe defendant, and that each individual defendant's employer be added as a John or Jane Doe defendant. Id. at ¶¶9-26. For example, the plaintiff requests that "D. Henning be added as Defendant John/Jane Doe #1 and his/her Employer be added as defendant John/Jane Doe #2 until which time sufficient information is known to satisfy the court and this plaintiff for this litigation." Id. at ¶9. The plaintiff does not need to sue Doe defendants in addition to the individual defendants because he knows the names of the individual defendants, and he may not sue the employer(s) of the individual defendants based on the fact that that individual defendant works for the employer. See Hildebrandt v. Ill. Dep't of Nat. Res., 34 F.3d 1014, 1039 (7th Cir. 2003). The court will dismiss John/Jane Doe 1-35.

The plaintiff has sued the Department of Corrections, the Bureau of Health Services, the State of Wisconsin and the United States of America. The plaintiff may not proceed against these defendants because they are not persons subject to suit under §1983. "[S]tates and their agencies are not 'persons' subject to suit under 42 U.S.C. § 1983." Johnson v. Supreme Ct. of

14

Ill., 165 F.3d 1140, 1141 (7th Cir. 1999). This means that "[n]either the State of Wisconsin nor the State's Department of Corrections is a proper defendant." Andreola v. Wisconsin, 171 F. App'x 514, 515 (7th Cir. 2006); see also Mayhugh v. State, 364 Wis. 2d 208, 224 (Wis. 2015) (state entitled to sovereign immunity and immune from suit); Will v. Mich. Dep't of State Police, 491 U.S. 58, 66-67 (1989). The United States is not a "person" subject to suit under §1983. Futrell v. United States, Case No. 14-cv-2089, 2016 WL 3181998, at *5 (S.D. Ind. 2016) (citing Accardi v. United States, 435 F.2d 1239, 1241 (3d Cir. 1970)). Sovereign immunity also bars any claim against the United States of America. See Study v. United States, 782 F. Supp. 1293, 1298 (S.D. Ind. 1991). Additionally, claims brought under 42 U.S.C. §1983 can be brought only against persons acting under color of *state* law, such as state officials, and does not apply to claims against the United States. See 42 U.S.C. §1983; London v. RBS Citizens, N.A., 600 F.3d 742, 745-46 (7th Cir. 2010). The court will dismiss the Department of Corrections, the Bureau of Health Services, the State of Wisconsin and the United States.

A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when he or she acts with deliberate indifference to the serious medical need of an incarcerated individual. Cesal v. Moats, 851 F.3d 714, 720-21 (7th Cir. 2017) (citing Estelle v. Gamble, 429 U.S. 97, 104–05 (1976)). To state a claim for deliberate indifference for deficient medical care, the plaintiff "must allege an objectively serious medical condition and an

official's deliberate indifference to that condition." Id. at 721 (quoting Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

An objectively serious medical need is one that has either been diagnosed by a physician and demands treatment or is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. (quoting King v. Kramer, 680 F.3d 1013, 1018 (7th Cir. 2012)). The deliberate indifference standard is subjective and requires a plaintiff to allege that the official knew of, but disregarded, a substantial risk to the incarcerated individual's health. Id. (citing Farmer v. Brennan, 511 U.S. 825, 836-38 (1994); Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005)).

The plaintiff's back and neck conditions, which allegedly cause him severe pain, amount to a serious medical need. See Gutierrez v. Peters, 111 F.3d 1364, 1373 (7th Cir. 1997); Arnett v Webster, 658 F.3d 742, (7th Cir. 2011). The plaintiff has alleged that defendants Trzbiatowski and Utter acted with deliberate indifference to that need because they denied him treatment for his conditions and pain and/or delayed that treatment. The plaintiff has alleged that defendants Henning, Cotton, Bost, Kilmer, Baker and Yonash acted with deliberate indifference because they allegedly knew about the plaintiff's painful condition but did not provide him with medical care. The court will allow the plaintiff to proceed on these claims. The court also will allow the plaintiff to proceed against defendant DeGroot because DeGroot allegedly knew about the plaintiff's condition based on the plaintiff's administrative complaint but did not help him.

16

The plaintiff has not stated a plausible claim for relief based on allegations that defendants Utter, Baier, G. Trzebatowski, Swiekowski, Tallier, Koehler and Cummings participated in a committee whose only purpose was to deny the medical needs of incarcerated individuals. The plaintiff's allegations are conclusory and do not pertain to the plaintiff and his medical condition. See Iqbal, 556 U.S. at 678. The plaintiff has not stated a claim against the remaining defendants (Garland, Sorenson, Perttu, Heuvelmans) because the complaint does not include any allegations against them.

## V. Plaintiff's Motions for Temporary Restraining Order and Preliminary Injunction (Dkt. No. 14)

The plaintiff has filed a motion for temporary restraining order and preliminary injunction "to ensure that he receives meaningful medical care." Dkt. No. 14 at 1. The Supreme Court has characterized "injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008) (citing Mazurek v. Armstrong, 520 U.S. 968, 972 (1997)). To obtain a preliminary injunction, a plaintiff must show that: (1) he has some likelihood of success on the merits; (2) traditional legal remedies would be inadequate; and (3) he will likely suffer irreparable harm in the absence of preliminary relief. Mays v. Dart, 974 F.3d 810, 818 (7th Cir. 2020). "If a plaintiff makes such a showing, the court proceeds to a balancing analysis, where the court must weigh the harm the denial of the preliminary injunction would cause the plaintiff against the harm to the defendant if the court were to grant it." Mays, 974 F.3d at 818 (citing Courthouse News Serv. v. Brown, 908

17

F.3d 1063, 1068 (7th Cir. 2018)). The balancing analysis involves a "'sliding scale' approach: the more likely the plaintiff is to win on the merits, the less the balance of harms needs to weigh in his favor, and vice versa." Mays, 974 F.3d at 818 (citing Ty, Inc. v. Jones Grp., Inc., 237 F.3d 891, 895 (7th Cir. 2001)).

In the context of litigation by incarcerated persons, the scope of the court's authority to issue an injunction is circumscribed by the Prison Litigation Reform Act ("PLRA"). See Westefer v. Neal, 682 F.3d 679, 683 (7th Cir. 2012). Under the PLRA, preliminary injunctive relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. §3626(a)(2); see also Westefer, 682 F.3d at 683 (noting the PLRA "enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: prisons officials have broad administrative and discretionary authority over the institutions they manage" (internal quotation marks and citation omitted)).

The plaintiff's motion asks only for "meaningful medical care," dkt. no. 14 at ¶10; in his amended complaint, the plaintiff already has requested meaningful medical care that will stop or slow down damage and relieve pain, dkt. no. 13-1 at ¶70. The plaintiff's complaint describes ongoing, increasing, debilitating neck and back pain. Although the plaintiff says he received relief from an epidural injection for his neck pain, he says he has not received treatment for his back condition. On the other hand, the plaintiff has not requested specific relief. The court cannot grant his motion for preliminary

18

injunction for "meaningful medical care" without a more specific explanation of the relief the plaintiff seeks. The court will deny the plaintiff's motions for preliminary injunction and temporary restraining order. The plaintiff may file a renewed motion for a preliminary injunction if he still believes such relief is necessary. If the plaintiff files a renewed motion, he must request specific relief so that the defendants can respond to the motion.

## VI. Plaintiff's Motion to Recruit Counsel (Dkt. No. 17)

In a civil case, the court has the discretion to recruit counsel for individuals unable to afford counsel. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866–67 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

In exercising its discretion, the court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" Eagan v. Dempsey, 987 F.3d 667, 682 (7th Cir. 2021) (quoting Pruitt v. Mote, 503 F.3d 647, 654–55 (7th Cir. 2007)). To satisfy the first prong, the court must determine that a plaintiff made a good faith effort to hire counsel. Pickett v. Chi. Transit Auth., 930 F.3d 869, 871 (7th Cir. 2019). "This is a mandatory, threshold inquiry that

19

must be determined before moving to the second inquiry." Eagan, 987 F.3d at 682. To do so, the plaintiff must show he contacted at least three lawyers and provide the court with (1) the lawyers' names; (2) their addresses; (3) how and when the plaintiff attempted to contact the lawyer; and (4) the lawyers' responses.

"The second inquiry requires consideration of both the factual and legal complexity of the plaintiff's claims and the competence of the plaintiff to litigate those claims." Eagan, 987 F.3d at 682. When considering the second prong, the court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." Pennewell v. Parish, 923 F.3d 486, 490 (7th Cir. 2019). The court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." Id. This includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." Id. at 490–91. The court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." Id. at 491. In situations where the plaintiff files his motion in the early stages of the case, the court may determine that it is "impossible to tell whether [the plaintiff] could represent himself adequately." Pickett, 930 F.3d at 871.

The plaintiff has met the first <u>Pruitt</u> requirement. He has provided documentation showing that he has tried to find a lawyer on his own before asking for the court's help.

But the plaintiff has not demonstrated that, at this early stage in the case, he is not capable of pursuing the case on his own. He says that he is representing himself and that he is indigent. Dkt. No. 17 at 1. He asserts that "[t]here is little left in this civil suit that the plaintiff is capable of handling on his own," because the case involves medical matters "which will cause claims of confidentiality." <u>Id.</u> He says he will need medical experts and "likely" a special master, and that he will need assistance in serving some defendants. <u>Id.</u> He says that he will need counsel to help him "with the proper way to list damages," to help him "refut[e] all dilatory motions" and to help him with exhibits and witnesses. <u>Id.</u> at 2.

The plaintiff need not worry about serving the defendants—the court will arrange for service. As for confidentiality, the plaintiff is entitled to his own medical records (which he can obtain by asking for them during the discovery phase of the case, when it starts). As for medical experts and special masters, it is far too early in the case for either. The next thing that will happen in the case is that the court will order the complaint to be served on the defendants. The defendants then will have a chance to either answer the complaint or to respond to it in some other way. There is nothing the plaintiff needs to do until the defendants either answer or otherwise respond.

As for the plaintiff's assertion that he is indigent and representing himself, unfortunately this is true of almost all incarcerated persons who file lawsuits in federal court. The court explained above that there are not enough attorneys to represent every *pro se* litigant, and the plaintiff's filings to date do not suggest he is one of those litigants most in need of assistance to present his case. He files frequently, and the documents he files are lengthy and detailed. The plaintiff has a thorough understanding of the facts of his case and his claims against the defendants. The court is allowing him to proceed against many of those defendants; those it has dismissed are being dismissed only because they are not subject to suit under the civil rights statute or because the plaintiff did not state any claims against them.

The court will deny without prejudice the plaintiff's motion to recruit counsel. That means that if, down the line, the case becomes too complicated for the plaintiff to manage, he may renew his motion.

## VII. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **GRANTS** the plaintiff's motion for leave to file amended complaint. Dkt. No. 13.

The court **ORDERS** that the Clerk of Court must docket the proposed amended complaint (Dkt. No. 13-1) as the operative complaint.

22

The plaintiff may proceed on an Eighth Amendment medical care claim against defendants Virginia Trzbiatowski, Hanna Utter, D. Henning, R. Cotton, S. Bost, J. Kilmer, E. Baker, L. Yonash and A. DeGroot.

The court **ORDERS** that defendants Department of Corrections, Bureau of Health Services, State of Wisconsin, United States of America, S. Garland, William Swiekatowski, L. Sorenson, M. Tallier, J. Koehler, S. Cummings, J. Perttu, T. Huevelmans, G. Trzbiatowski and John/Jane Doe #1-35 are **DISMISSED**.

Under an informal service agreement between the Wisconsin Department of Justice and this court, the court will electronically transmit a copy of the proposed amended complaint (Dkt. No. 13-1) and this order to the Wisconsin Department of Justice for service on defendants Virginia Trzbiatowski, Utter, Henning, Cotton, Bost, Kilmer, Baker, Yonash and DeGroot. Under the informal service agreement, the court **ORDERS** those defendants to file a responsive pleading to the amended complaint within sixty (60) days.

The court **DENIES** the plaintiff's motions for temporary restraining order and preliminary injunction. Dkt. No. 14.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion to recruit counsel. Dkt. No. 17.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$312.44** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's

23

trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to Green Bay Correctional Institution, where the plaintiff is confined.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[3] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

---

[3] The Prisoner E-Filing Program is mandatory for all individuals incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

24

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by incarcerated persons. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin, this 13th day of November, 2023.

BY THE COURT:

HON. PAMELA PEPPER
Chief United States District Judge

25