UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DAVID R. HAWKINSON,

                        Plaintiff,

  v.                                                  Case No. 23-cv-634-pp

VIRGINIA TRZEBIATOWSKI, *et al.*,

                        Defendants.

**ORDER DENYING AS MOOT PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (DKT. NO. 23), DENYING AS MOOT PLAINTIFF'S MOTION TO EXPEDITE (DKT. NO. 36), DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT (DKT. NO. 37), DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE SUR-REPLY (DKT. NO. 40), DENYING AS MOOT PLAINTIFF'S MOTION FOR LEAVE TO FILE SUR-REPLY (DKT. NO. 51) AND DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR LEAVE TO FILE MOTION TO APPOINT COUNSEL (DKT. NO. 56)**

Plaintiff David R. Hawkinson, who is incarcerated at Green Bay Correctional Institution and is representing himself, filed this case alleging that the defendants violated his constitutional rights. The operative complaint consists of the amended complaint (Dkt. No. 20) and the supplemental complaint (Dkt. No. 25). On November 13, 2023, the court screened the amended complaint and allowed the plaintiff to proceed on Eighth Amendment medical care claims based on allegations that defendants Trzebiatowski and Utter denied and/or delayed providing him treatment for his back and neck conditions; that defendants Henning, Cotton, Bost, Kilmer, Baker and Yonash knew about the plaintiff's painful condition but did not provide him with medical care; and that defendant DeGroot knew about the plaintiff's condition

1

but did not help him. Dkt. No. 19 at 16; see also Dkt. No. 20 (Amended Complaint). On January 31, 2024, the court granted the plaintiff's motion for leave to file a supplemental complaint and to proceed on Eighth Amendment medical care claims against defendant Christopher Stevens based on allegations that Stevens knew about the plaintiff's ongoing painful medical conditions and had the ability to help him but did not do so. Dkt. No. 32 at 10; see also Dkt. No. 25 (Supplemental Complaint). This order addresses several motions the plaintiff has filed since the court issued the screening order

I.   **Motion for Preliminary Injunction (Dkt. No. 23)**

The plaintiff filed a motion for preliminary injunction and temporary restraining order. Dkt. No. 23. He asked the court for an order "to stop retaliatory behavior." Id. at 1. He said that the health services unit and staff have unfettered access to his accounts, and he asked the court to order that no monies be removed from his account as a "Copayment" as long as this case is open. Id. According to the plaintiff, he will suffer continual damage until he receives "meaningful medical care," and he asked the court to order that he be seen by a neurologist and a hand specialist and to order that the institution staff carry out the orders of these specialists. Id. at 3. The plaintiff also asked the court to order Green Bay Correctional Institution to stop removing all monies for the Health Services Unit (HSU) from his accounts until this case is settled—especially co-payments, because HSU can remove these funds without permission. Id. The plaintiff also appears to ask the court to prohibit the Department of Corrections from transferring him, saying that this is "one of the

tactics they use to make you go through the entire process of receiving medical care." Id.

On January 31, 2024, the court denied several motions the plaintiff had filed just after filing his amended complaint; those motions were based on his allegations that the institution had engaged in retaliatory behavior related to access to his accounts and he asked at that time that the court order that he not be transferred to another institution. Dkt. No. 32 at 6. Although the court denied several of the motions, the court ordered the defendants who had been served (not all the defendants had been served at the time) to respond to the plaintiff's motion for preliminary injunction regarding his request that the court order him to be seen by a rheumatologist and a hand specialist and for the court to order the defendants to follow the recommendations of those specialists.[1] Id. at 7.

Defendants Baker, Bost, Cotton, DeGroot, Henning, Kilmer, Yonash, Stevens and Utter ("the State defendants") filed a response in which they contended that the court should deny the plaintiff's motion for preliminary injunction. Dkt. No. 46. According to the State defendants, the plaintiff's motion was moot because the plaintiff saw an orthopedic surgeon hand specialist on January 17, 2024—two months after filing his motion for preliminary injunction—and that surgeon determined that all the plaintiff required was an oral steroid and follow-up as needed. Id. at 5.

---

[1] The court denied the plaintiff's motion for temporary restraining order because it was redundant to his motion for preliminary injunction. Id. at 8.

The plaintiff subsequently filed a motion for leave to file a sur-reply; the document he attached to that motion appears to be his reply in support of his motion for preliminary injunction. Dkt. Nos. 51, 51-1.[2] The plaintiff does not need the court's permission to file a reply, so the court will deny the motion for leave to file a sur-reply as moot. The plaintiff stated in his reply that the defendants had ignored the advice to send him for a nerve test and that they had not told him all of his care options or what kind of arthritis he has; he asserted that a rheumatologist would address these things. Dkt. No. 51-1 at ¶¶1-5.

The Supreme Court has characterized "injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008) (citing Mazurek v. Armstrong, 520 U.S. 968, 972 (1997)). To obtain a preliminary injunction, a plaintiff must show that (1) he has some likelihood of success on the merits; (2) traditional legal remedies would be inadequate; and (3) he likely will suffer irreparable harm in the absence of preliminary relief. Mays v. Dart, 974 F.3d 810, 818 (7th Cir. 2020). "If a plaintiff makes such a showing, the court proceeds to a balancing analysis, where the court must weigh the harm the denial of the preliminary injunction would cause the plaintiff against the harm to the defendant if the court were to

---

[2] The plaintiff filed another motion for leave to file sur-reply which relates to defendants' answer. Dkt. No. 40. The court will address that motion below.

4

grant it." Mays, 974 F.3d at 818 (citing Courthouse News Serv. v. Brown, 908 F.3d 1063, 1068 (7th Cir. 2018)). The balancing analysis involves a "'sliding scale' approach: the more likely the plaintiff is to win on the merits, the less the balance of harms needs to weigh in his favor, and vice versa." Mays, 974 F.3d at 818 (citing Ty, Inc. v. Jones Grp., Inc., 237 F.3d 891, 895 (7th Cir. 2001)).

In the context of a case filed by an incarcerated person, the scope of the court's authority to issue an injunction is circumscribed by the Prison Litigation Reform Act ("PLRA"). See Westefer v. Neal, 682 F.3d 679, 683 (7th Cir. 2012). Under the PLRA, preliminary injunctive relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. §3626(a)(2); see also Westefer, 682 F.3d at 683 (noting the PLRA "enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: prisons officials have broad administrative and discretionary authority over the institutions they manage" (internal quotation marks and citation omitted)).

The plaintiff has asked to be seen by a rheumatologist and a hand specialist. On December 13, 2023, Dr. Daughtry from Green Bay's HSU referred the plaintiff to see an orthopedist regarding his right-hand pain. Dkt. No. 46 at 2. On January 17, 2024, Dr. Daniel Severance, an orthopedic surgeon, saw and evaluated the plaintiff for his complaint of bilateral hand pain and swelling. Dkt. No. 46 at 2. Dr. Severance recommended an oral steroid to address pain and swelling, and follow-up as needed. Id. at 2-3. The

State defendants' response shows that the plaintiff has received treatment for his medical issues. The plaintiff is not entitled to choose his own treatment. See Holloway v. Delaware Cnty. Sheriff, 700 F.3d 1063, 1073 (7th Cir. 2012). The court agrees with the State defendants; based on the plaintiff's medical records, his motion for preliminary injunction is moot.

**II.     Plaintiff's Motion to Expedite (Dkt. No. 36) and Motion for Leave to File Motion to Appoint Counsel (Dkt. No. 56)**

Three months ago, the court received from the plaintiff a motion to expedite this case because he expects to have heart surgery soon. Dkt. No. 36 at 1-2. He stated that his health was deteriorating, and he wanted the court to reconsider recruiting counsel.[3] Id. at 2. The court will deny as moot the plaintiff's motion to expedite because this order addresses the plaintiff's pending motions.

The plaintiff subsequently filed a motion for leave to file a second motion to appoint counsel. Dkt. No. 56. In the attached proposed motion for appointment of counsel, the plaintiff stated that there was little left in this case that he could handle on his own and that he would need a medical expert. Dkt. No. 56-1 at ¶2. The plaintiff stated that his health had declined to the point where typing motions had become mentally paralyzing—his hands swell up, his hands have pins and needles on and off, he is having panic attacks and he is supposed to receive care for his heart but that has been delayed for over a

---

[3] On November 6, 2023, the court received from the plaintiff his first motion asking the court to recruit a lawyer to represent him. DKt. No. 17.  That was one of the motions the court denied in its November 13, 2023 order, albeit without prejudice. Dkt. No. 19.

6

Case 2:23-cv-00634-PP   Filed 05/13/24   Page 6 of 11   Document 64

month. Id. at ¶11. The plaintiff stated that he had no idea if he would survive heart surgery or how long it would take to heal. Id. at ¶14.

In a civil case, the court has discretion to recruit a lawyer for individuals who cannot afford to hire one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

In exercising its discretion, the court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" Eagan v. Dempsey, 987 F.3d 667, 682 (7th Cir. 2021) (quoting Pruitt v. Mote, 503 F.3d 647, 654-55 (7th Cir. 2007)). And, given the scarcity of *pro bono* counsel resources, the court may also consider the merits of a plaintiff's claim and what is at stake. Watts v. Kidman, 42 F.4th 755, 763-64 (7th Cir. 2022).

To satisfy the first prong, the court must determine that a plaintiff made a good faith effort to hire counsel. Pickett v. Chi. Transit Authority, 930 F.3d 869, 871 (7th Cir. 2019). "This is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." Eagan, 987 F.3d at 682. To demonstrate he satisfied the first prong, the plaintiff must show he contacted

at least three lawyers and provide the court with (1) the lawyers' names; (2) their addresses; (3) how and when the plaintiff attempted to contact the lawyer; and (4) the lawyers' responses. The plaintiff has satisfied the requirement that he try to find a lawyer on his own.

"The second inquiry requires consideration of both the factual and legal complexity of the plaintiff's claims and the competence of the plaintiff to litigate those claims." Eagan, 987 F.3d at 682. When considering the second prong, the court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." Pennewell v. Parish, 923 F.3d 486, 490 (7th Cir. 2019). The court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." Id. This includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." Id. at 490-491. The court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." Id. at 491. In situations where the plaintiff files his motion in the early stages of the case, the court may determine that it is "impossible to tell whether [the plaintiff] could represent himself adequately." Pickett, 930 F.3d at 871.

The court previously determined that the plaintiff had made a reasonable attempt to find a lawyer on his own. Dkt. No. 19 at 21. But in the fall of 2023,

the plaintiff had not demonstrated that he was not capable of handling this case on his own, and that remains true as of the time of this second motion to appoint counsel. His filings in this case show that he is competent, understands the facts that underlie the case, advocates for himself and communicates clearly and effectively. The defendants recently filed a motion for partial summary judgment on exhaustion grounds. Dkt. No. 58. The court gave the plaintiff a deadline of May 29, 2024 by which to respond to that motion. Dkt. No. 62. If the plaintiff needs more time to respond because of his upcoming surgery or because he is recovering from the surgery, he may file a motion for an extension of time. The court will deny without prejudice the plaintiff's motion for leave to file a second motion to appoint counsel.

### III. Plaintiff's Motion for Default Judgment as to Defendant Trzebiatowski (Dkt. No. 37)

The plaintiff contends that court should find defendant Trzebiatowski in default for failure to answer the amended complaint. Dkt. No. 37. But Trzebiatowski is not in default. The record shows that on November 13, 2013, the court ordered service of the amended complaint on the defendants under an informal service agreement between the Wisconsin Department of Justice (DOJ) and the court. Dkt. No. 19 at 23. On January 8, 2024, the court received notification that the DOJ did not accept service for defendant Trzbiatowski. Dkt. No. 28. On January 31, 2024, the court ordered the United States Marshals Service to serve a copy of the supplemental complaint on Trzbiatwoski. Dkt. No. 32 at 11-12. Only five days later, on February 5, 2024, defendant Trzebiatowski waived service of the summons and complaint. Dkt.

9

No. 35. She timely filed a responsive pleading to the amended complaint on February 12, 2024, and to the supplemental complaint on February 27, 2024. Dkt. Nos. 44, 49. Defendant Trzebiatowski is not in default and the court will deny the plaintiff's motion for default judgment.

### IV. Plaintiff's Motion for Leave to File Sur-Reply (Dkt. No. 40)

The plaintiff filed a motion for leave to file a reply to the defendants' answer; in that motion, the plaintiff asserts only that such a pleading is necessary "to preserve certain rights that the defense is trying to circumvent." Dkt. Nos. 40. The proposed sur-reply consists of eleven, single-spaced pages objecting to various representations in the defendants' answer, as well as a page of case citations. Dkt. No. 40-1. The Federal Rules of Civil Procedure allow a complaint and an answer. Only if the court allows a reply to the answer may a plaintiff file such a document, Fed. R. Civ. P. 7(a)(7), and courts rarely allow replies. The court did not order the plaintiff to file a reply to the defendants' answer and the plaintiff has not demonstrated any need for a reply. If the defendants file a motion to dismiss or a motion for summary judgment on the merits, the plaintiff will have an opportunity to oppose those motions. If any of the plaintiff's claims survive for trial, he will have the opportunity to dispute the defendants' version of events at that time. The court will deny the plaintiff's motion for leave to file a sur-reply to the defendants' answer.

### V. Conclusion

The court **DENIES AS MOOT** the plaintiff's motion for preliminary injunction. Dkt. No. 23.

The court **DENIES AS MOOT** the plaintiff's motion to expedite. Dkt. No. 36.

The court **DENIES** the plaintiff's motion for default judgment as to defendant Trzebiatowski. Dkt. No. 37.

The court **DENIES** the plaintiff's motion for leave to file sur-reply. Dkt. No. 40.

The court **DENIES AS MOOT** the plaintiff's motion for leave to file sur-reply. Dkt. No. 51.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion for leave to file a motion for appointment of counsel. Dkt. No. 56.

Dated in Milwaukee, Wisconsin this 13th day of May, 2024.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**