UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

---

DAVID R. HAWKINSON,

Plaintiff,

vs.

Case No.: 2:23-cv-00634-PP

DEPARTMENT OF CORRECTIONS, BUREAU OF HEALTH SERVICES, VIRGINIA TRZEBIATOWSKI, HANNA UTTER, D. HENNING, R. COTTON, S. BOST, J. KILMER, S. GARLAND, E. BAKER, L. YONASH, A. DEGROOT, L. SORENSON, M. TALLIER, J. KOEHLER, L. SORENSON, S. CUMMINGS, J. PERTTU, T. HEUVELMANS, WILLIAM SWIEKATOWSKI, JOHN/JANE DOE 1-35,

Defendants.

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT VIRGINIA TRZEBIATOWSKI'S MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

---

## INTRODUCTION

This litigation involves claims by the Plaintiff against various medical providers at Green Bay Correctional Institution. Both in the various Pleadings filed by the Plaintiff, as well as his Motion for Summary Judgment, many of the allegations made are vague, generalized, non-specific with respect to Defendants, and simply unclear. As for Defendant Virginia Trzebiatowski, her involvement with medical care of the Plaintiff was minimal (4 visits), straightforward, well within the medical standard of care, and in no way did she show any deliberate indifference towards any medical condition, let alone any serious condition. As seen by the undisputed facts, not only should this Court deny the Plaintiff's Motion for Summary Judgment, and also find in favor of Nurse Trzebiatowski granting her Motion for Summary Judgment, dismissing her from the present lawsuit, with prejudice.

## FACTS

At all times relevant to this case, the Plaintiff, David Hawkinson, was an inmate at the Green Bay Correctional Institution (GBCI). When seeking medical care or treatment within the system, he was subject to the rules and regulations to do so. For only a small portion of the time relevant to this litigation, Nurse Virginia Trzebiatowski worked as a Nurse Practitioner at GBCI.

**Inmate Patient Care at Green Bay Correctional**

At GBCI inmates are not assigned to a single health care provider. (DPFOF ¶ 8). This is because providers work differing schedules, or may be temporary or seasonal providers. (Id.) Inmates are seen by the available provider based on scheduling and the emergent need of medical attention. (Id.) In this way providers do not necessarily follow each patient, but the Health Services Unit generally follows inmate health care institutionally. (Id.) Because of how GBCI is staffed, providing inmate medical care is not dependent on one person, and approval of medication, new orders, or referrals are not dependent on one provider in the Health Services Unit. (DPFOF ¶ 9.)

Medical providers at GBCI are not always aware of every inmate's plan of care or concerns about a plan of care unless it is specifically brought to their attention through direct communication. (DPFOF ¶¶ 8-10.) Providers do not regularly review every patient's medical records. (DPFOF ¶¶ 8-10.) When treating Hawkinson or any other inmate, medical providers such as Nurse Trzebiatowski take into consideration the treatment recommendations of other providers at GBCI, as well as recommendations of other providers and the patient's health history in making medical decisions and developing care plans for inmates. (DPFOF ¶ 11.) To be seen by an outside provider, an advanced care provider must make a referral, and the Medical Program Assistant arranges the appointment, which will be coordinated with a specialist's schedule with varying wait time. (Id. ¶ 12-14).

When outside appointments for inmate patients are requested, the Health Services Unit ("HSU") at GBCI has limited control over the actual offsite scheduling of appointments. (DPFOF ¶ 15.) The offsite appointments are scheduled according to the offsite provider's availability along

with the institution's transportation availability. (Id.) Wait times for off-site specialists vary depending on each specialist's availability. (Id.) Nurse Trzebiatowski did not schedule appointments with outside providers, could not control the schedules of outside providers, nor was she aware of which inmates were referred to an offsite provider as she was not the sole medical treatment provider. (Id. ¶ 17.)

Hawkinson alleges that during an evaluation for chest pain and leg edema, he was denied care for neck and back pain which he stated are signs of heart failure. (Hawkinson Dec., Doc. 74.) He further alleges that he sought help for pain management for 17+ years, that a "circular" policy system and "cookie cutter answers" were used to delay his receipt of care. (Id.) He also asserts that he now has heart failure due to indifference of providers regarding his neck and back complaints, that he has cardiomyopathy caused by an "untreated" blockage of his heart and that he suffers from anxiety, stress, depression and pain and that the DOC continues to "torture" him and that he has been lied to and mislead. (Id.) As will be shown herein, there is no evidence or any support whatsoever that any of these allegations in any way relate to Defendant Nurse Trzebiatowski, nor any evidence to support the allegations that Nurse Trzebiatowski was deliberately indifferent to any medical concern of the Plaintiff.

**<u>Nurse Trzebiatowski's Medical Encounters with Hawkinson</u>**

In total, Defendant Nurse Trzebiatowski saw Hawkinson a total of four in-person visits from 10/15/2021 until 11/02/2022. (DPFOF ¶ 20.) Moreover, during this one-year period of time, Nurse Trzebiatowski was not working, and out of Wisconsin for more than four months. (DPFOF ¶ 26.) In general, she was a small part of his overall care and treatment while incarcerated at GBCI for the period of time complained of in this litigation.

*<u>1. October 15, 2021 visit</u>*

Nurse Trzebiatowski saw Hawkinson in person for the first time since his transfer to GBCI on October 15, 2021. (DPFOF ¶ 21.) The purpose of the visit was for complaints of worsening palpitations and swelling of his left leg. (DPFOF ¶ 21.) At that visit he asked to also discuss a

prior concern of neck pain and per standard practice in this setting, he was directed that this visit would specifically address his complaints of palpitations and leg swelling, as this was the written purpose of the visit. (DPFOF ¶ 22.) Hawkinson also raised concern of urinary concerns, including hematuria. (DPFOF ¶ 23.) While this was not part of the intended purpose of the visit, it was addressed due to the potential for urgent care need. (Id.) Hawkinson requested oxybutynin and changes to his testosterone dosing. (DPFOF ¶ 24.) Medication changes were ordered to treat his palpitation symptoms and nursing monitoring of his blood pressure was ordered. (DPFOF ¶ 25.) Education was provided regarding oxybutynin. (DPFOF ¶ 25.)

As discussed more thoroughly below, after this visit, in December 2021 Nurse Trzebiatowski left for a long-term leave to spend the winter months in Florida, and did not return to GBCI until April, 2022. (DPFOF ¶ 26.)

*2. May 13, 2022 visit*

Nurse Trzebiatowski saw Hawkinson for a second time on May 13, 2022. (DPFOF ¶ 27.) At that time the visit was for care focused on Hawkinson's blood pressure, Vitamin D level and testosterone therapy. (DPFOF ¶ 27.) Hawkinson declined a diuretic to treat his leg swelling along with declining metropolol to treat his blood pressure. (DPFOF ¶ 28.) Nurse Trzebiatowski informed Hawkinson that she would discuss his request to change to his testosterone dosing schedule with Dr. LaVoie, and would look into his request for an ongoing prescription for Vitamin D. (DPFOF ¶ 29.) Subsequent to that visit Hawkinson was informed that a referral to Endocrinology would be placed for management of his testosterone therapy. (DPFOF ¶ 30.) This was made, however, was later cancelled after discussion with Dr. LaVoie. (DPFOF ¶ 30.)

*3. October 5, 2022 visit*

Nurse Trzebiatowski evaluated Hawkinson for complaints of hemorrhoids, follow-up on Obstructive Sleep Apnea treated with CPAP, and complaints of headaches and sciatica. (DPFOF ¶ 31.) This third visit occurred on October 5, 2022. (DPFOF ¶ 31.) Hawkinson reported right groin pain and sciatica although stated his neck the more bothersome concern. (DPFOF ¶ 32.) Hawkinson previously had an epidural steroid injection and requested another. (DPFOF ¶ 33.)

Nurse Trzebiatowski made a referral to Prevea Health for those concerns. (DPFOF ¶ 34.) Hawkinson stated he was sleeping well and in regard to his headache symptoms in the sinus region, he agreed to resume fluticasone. (DPFOF ¶ 35.) Hawkinson continued to report intermittent palpitations and when informed that his testosterone therapy could be causative, he opted to stop that part of the conversation. (DPFOF ¶ 36.) Hawkinson continued to refuse a beta-blocker as treatment for palpitations and also noted that his leg swelling was reduced with a prescription for amlodipine that was started after he refused metoprolol. (DPFOF ¶¶ 37-38.)

*3. November 2, 2022 visit*

Nurse Trzebiatowski saw Hawkinson for a fourth and final in-person visit on November 2, 2022 to evaluate near syncopal episodes and his concerns for low blood sugar when he worked in the mornings. (DPFOF ¶ 39.) His blood pressure was somewhat elevated. (DPFOF ¶ 40.) An increase in his amlodipine dose was ordered as well as discussion with nursing staff about how to handle caloric intake needs during his work time. (DPFOF ¶ 40.)

*Summary of care and scope of visits / compliance issues with recommendations*

As per the protocol at GBCI, patients are seen based on a documented concern in order to limit the scope of an encounter with a medical provider. To allow an inmate to simply show up and demand any and all medical issues be addressed would be tantamount to allowing a patient to direct their own medical care, and would create havoc in the ability to provide medical care in a safe and timely manner. In this way, patients document in a form a request to be seen for a non-urgent or emergency medical condition, and indicate what medical conditions for which they will be seen. Visits are then generally limited to those issues, unless any urgent or emerging issue arises during the appointment. (DPFOF ¶¶ 8-17.)

At all times during her treatment of Hawkinson, Nurse Trzebiatowski made decisions that were medically indicated based on his presentation and medical history, taking into consideration his medical needs and documented evaluation and collaborations with other providers. (DPFOF ¶ 50.) Moreover, it is Nurse Trzebiatowski's custom, habit, and routine to complete thorough

examinations of patients, when cooperative, and give medical recommendations and orders in the best interests of the patient. (DPFOF ¶ 51.) During the four interactions with Hawkinson, and discussions with other HSU colleagues, Nurse Trzebiatowski was aware that Hawkinson had a known history of multiple requests to change medication, refuse medication, and otherwise attempt to direct his care once he was seen by a medical provider. (DPFOF ¶ 52.) At no time during her treatment of Hawkinson or participation in his care did Nurse Trzebiatowski ignore signs or symptoms of disease or injury or deliberately refuse or fail to provide medical treatment. (DPFOF ¶ 53.)

As noted above, in this case Hawkinson alleges that during an evaluation for chest pain and leg edema, he was denied care for neck and back pain which he stated are signs of heart failure. Hawkinson was not denied care or evaluation by Nurse Trzebiatowski for these complaints or concerns. For example, during the October 15, 2021 visit Nurse Trzebiatowski evaluated Hawkinson for complaints of chest pain and edema of his lower legs, and noted that he has recently undergone an extensive cardiac workup for palpitations. (DPFOF ¶ 21.) At that visit Nurse Trzebiatowski reviewed prior records from Emergency Room care, an admission for what was diagnosed as atypical chest pain of a noncardiac origin, noting that he had normal results on an echocardiogram, blood work, chest x-ray, telemetry and a nuclear medicine stress test. (DPFOF ¶ 44.) Nurse Trzebiatowski also noted that his treating cardiologist documented that Hawkinson's reported chest pain was "atypical with low-risk pretest probability." (DPFOF ¶ 45.) During this same visit Hawkinson brought up long-standing urinary symptoms and Nurse Trzebiatowski addressed those. (DPFOF ¶ 46.) Finally, Hawkinson asked for changes to his testosterone dose and his other musculoskeletal issues and Nurse Trzebiatowski explained that the visit needed to remain focused on the issues for which he was being seen that day. (DPFOF ¶ 22.) Nurse Trzebiatowski

ordered changes to his blood pressure medications to address the leg edema and directed additional nurse monitoring of his blood pressure. (DPFOF ¶ 25.)

During the October 5, 2022 visit, Hawkinson was evaluated by Nurse Trzebiatowski for complaints of hemorrhoids, headaches, sciatica, neck pain. (DPFOF ¶ 31.) Nurse Trzebiatowski initiated a referral to Pain Management for his neck pain, as Hawkinson requested another injection. (DPFOF ¶ 34.) During that examination, Hawkinson also mentioned intermittent palpitations but, despite Nurse Trzebiatowski's expressed concern about medication in view of his cardiac complaints, Hawkinson was not open to discussing the relationship between testosterone and the heart. (DPFOF ¶¶ 36-37.) Nurse Trzebiatowski also evaluated Hawkinson for the improvement of his leg edema, and nasal sprays were ordered by Nurse Trzebiatowski to treat his front sinus pain/headache. (DPFOF ¶ 41.)

**Nurse Trzebiatowski was not Present at Green Bay Correctional During Part of the Time She Was Alleged to be Indifferent to Hawkinson**

Nurse Trzebiatowski left GBCI in December 2021 and traveled to Florida where she stayed until April 19, 2022. (DPFOF ¶ 26.) She was not involved in any patient care of inmates during that time. (Id.) Essentially, Nurse Trzebiatowski was semi-retired in 2021 and 2022, had limited term contracts with Sumo Medical to provide nursing services at GBCI, and the contracted time period was to coincide with her retirement plan of spending winters in Florida. (Id.)

While Nurse Trzebiatowski was not employed at GBCI, and not providing patient care for Hawkinson or any other inmate, Hawkinson seems to criticize generally the care he did or did no receive. Nurse Trzebiatowski cannot be held responsible for care or requests for care when not employed at GBCI, because she was not on the medical staff at GBCI during this time. From December 2021 through April 2022, Nurse Trzebiatowski was not employed at GBCI, and thus not involved with any patient care or in any way involved with requested or scheduling of off-site medical appointments or evaluation of any patient. (DPFOF ¶ 26.) Moreover, after returning from Florida in 2023, Nurse Trzebiatowski never returned to work at GBCI. (DPFOF ¶ 42.) The various communications and complaints made by Hawkinson regarding follow-up appointments or

treatment that occurred when Nurse Trzebiatowski was not working at GBCI in no way involved her, because her only involvement as an employee at GBCI with the Plaintiff was limited to the October 2021 visit, and the three visits between May and November 2022. (Id.) This is important to recognize insofar as the scope of possible criticism regarding her involvement with Hawkinson is limited to only four medical appointments.

## SUMMARY JUDGMENT PROCEDURE

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The trial court is required to construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor. *See Zaya v. Sood,* 836 F.3d 800, 804 (7th Cir. 2016); *Burton v. Downey,* 805 F.3d 776, 783 (7th Cir. 2015).

After filing a Motion for Summary Judgment, the burden shifts to the nonmoving party to establish the existence of a factual question that must be resolved at trial. *See Zaya,* 836 F.3d at 806. However, an otherwise properly supported motion for summary judgment will not be defeated because of the mere existence of some alleged factual dispute between the parties. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The party opposing summary judgment must do more than simply show that there is some metaphysical doubt as to the material facts. Critically, "[s]ummary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence [he] has that would convince a trier of fact to accept [his] version of events." *Schacht v. Wis. Dep't of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999) (*overruled on other grounds); see also Rucker v. Gloe,* No. 08-C-916, 2011 WL 550123, at *2 (E.D. Wis. Feb. 4, 2011), *affd,* 432 F. App'x 631 (7th Cir. 2011). Rule 56 requires "something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted." *Drake v. Minn. Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) (citing *Hadley v. County of Du Page,* 715 F.2d 1238, 1243 (7th Cir. 1983)). Neither conjecture nor speculation suffice to defeat summary judgment. *McDonald*

*v. Vill. of Winnetka,* 371 F.3d 992, 1001 (7th Cir. 2004) ("Inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion."); *Selzer v. Lumen Energy Corp.*, 5 F. App'x 531, 533 (7th Cir. 2001). A copy of Fed. R. Civ. P. 56 and Civil L. R. 7 and 56 are provided to the Plaintiff, as required by Civil L. R. 56(a)(1)(B).

Any factual assertion in the affidavit, declaration, or other admissible documentary evidence will be accepted by the Court as being true unless the Plaintiff submits his own affidavit, declaration, or other admissible documentary evidence contradicting the factual assertion. (Civil L. R. 56(a)(1)(A).)

## ARGUMENT

### I. THE PLAINTIFF'S CLAIM OF DELIBERATE INDIFFERENCE FAILS AS A MATTER OF LAW BECAUSE NURSE TRZEBIATOWSKI DID NOT DISREGARD A SIGNIFICANT MEDICAL NEED OF THE PLAINTIFF

The objective medical evidence in this case shows that the Plaintiff cannot meet his burden of proof to show that he had a serious medical need, or that Nurse Trzebiatowski was deliberately indifferent to any serious medical need. For these reasons Summary Judgment should be granted in favor of Defendant Trzebiatowski.

#### A. The Legal Standard for Deliberate Indifference Claims

The Eighth Amendment safeguards a prisoner form a lack of medical care that "may result in pain and suffering which no one suggests would serve any penological purpose." *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015) (*citing Rodriguez v. Plymouth Ambulance Serv.,* 577 F.3d 816, 828 (7th Cir.2009) (quoting *Estelle v. Gamble,* 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976))). To state an Eighth Amendment claim based on deficient medical care, a plaintiff must allege an objectively serious medical condition and an official's deliberate indifference to that condition. *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir.2011). Prison medical officials violate the Constitution if they are deliberately indifferent to prisoners' serious medical needs. *Estelle,* 429 U.S. at 104, 97 S.Ct. 285.

For a plaintiff to succeed on a claim of deliberate indifference under the Eighth Amendment, they must demonstrate two elements: 1) they had an objectively serious medical condition; and 2) an official deliberately indifferent to that serious medical condition. *See Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011) (*citations omitted*). To show evidence of deliberate indifference, courts look to the "the totality of an inmate's medical care[.]" *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (*citing Cavalieri v. Shephard*, 321 F.3d 616, 625–26 (7th Cir. 2003)).

In order for a Plaintiff prisoner to demonstrate a claim of inadequate medical care, they "must show that her condition was serious, an objective standard" and "that a state official acted with the requisite culpable state of mind, deliberate indifference, a subjective standard." *Dunigan v. Winnebago County*, 165 F.3d 587, 590-91 (7th Cir. 1999). The *Dunigan* Court agreed that deliberate indifference is measured by the totality of the circumstances in examining the medical care the prisoner received, thus "a court must examine the entire record, not just isolated events." *Id.* at 591.

To determine if a prison medical official acted with deliberate indifference, courts should "look into his or her subjective state of mind." *Petties*, 836 F.3d at 728; *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). An official is deliberately indifferent when they disregard a known condition that poses "an excessive risk to inmate health or safety." *Dunigan v. Winnebago County*, 165 F.3d 587, 590 (7th Cir. 1999). Mere negligence or malpractice is insufficient to uphold such a claim. *Petties*, 836 F.3d at 728; *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016). The Supreme Court has instructed that a plaintiff must provide evidence that an official actually knew of and disregarded a <u>substantial risk of harm</u>. *Petties*, 836 F.3d at 728 (*citing Farmer*, 511 U.S. 825, 837, 114 S.Ct. 1970).

B. Hawkinson Cannot Prove he had a Serious Medical Condition

In order to succeed with his claim against Nurse Trzebiatowski, Hawkinson must first prove that he had a serious medical condition about which Nurse Trzebiatowski was deliberately indifferent. He cannot, and for that reason summary judgment should be granted in favor of Nurse Trzebiatowski.

An objectively "serious medical need" is a medical condition that requires treatment as recognized by a doctor or a medical need for which the necessity of treatment would be obvious to a layperson. *Johnson v. Snyder*, 444 F.3d 579, 584-85 (7th Cir. 2006). The plaintiff must demonstrate that the failure to treat the serious medical need has caused him injury or a serious risk of injury, no matter how serious the condition. *Jackson v. Pollion*, 733 F.3d 786, 789– 90 (7th Cir. 2013). Here, Hawkinson was seen by Nurse Trzebiatowski four times – and it is in the context of those four visits wherein it must be determined if Hawkinson had a serious medical condition.

Admittedly, when observing the complaints for which Hawkinson claims he did not receive care, the initial instinct is to conclude that he indeed had a serious medical condition. However, the context for the visits were entirely follow-up care, medical management, and otherwise addressing matters for which Hawkinson was receiving ongoing care. In the context of care at GBCI, Nurse Trzebiatowski was not responsible for the entire panoply of care that was given to Hawkinson during his incarceration, or his life. Rather, Nurse Trzebiatowski was charged with seeing a patient, in this case Hawkinson, for the reason stated on his request for care, and any other seemingly urgent or emergent issue that she identified based on her training, skill, and expertise.

C. There is No Evidence Nurse Trzebiatowski was Deliberately Indifferent

Even if the Plaintiff had an objectively serious medical need, the undisputed facts presented in this case show that appropriate medical evaluations occurred, and Nurse Trzebiatowski was

never deliberately indifferent to Hawkinson's medical needs. *See, e.g. Jackson v. Kotter*, 541 F.3d 688, 698 (7th Cir. 2008) ("A medical professional's treatment decisions will be accorded deference 'unless 'no minimally competent professional would have so responded under those circumstances.'""). Hawkinson cannot show that Nurse Trzebiatowski did not act appropriately with respect to his medical condition or her decision-making when she evaluated him.

Nurse Trzebiatowski need not defend all the medical care that was given to Hawkinson. However, even in her absence from GBCI for 4 months there is no evidence of serious disregard of a medical need. Even if there was, any care given to Hawkinson she Nurse Trzebiatowski was not employed at GBCI could not be imputed to her. The only evidence in this case shows that Nurse Trzebiatowski acted appropriately with respect to Hawkinson's medical condition when she evaluated him on November 3, 2021 and when she saw him during three subsequent appointments in 2022. Hawkinson's claims fail for these reasons, as a matter of law, and Summary Judgment is warranted.

Reviewing specifically the four medical encounters with Hawkinson, on each and every occasion Nurse Trzebiatowski saw Hawkinson for the documented reason the visit was requested, evaluated him, and provided treatment. Moreover, on at least one of those occasions Nurse Trzebiatowski provided additional medical evaluation once it was indicated based on an examination of Hawkinson, or in conversation, to address any potential acute medical need. Never – not once in the four visits with Hawkinson – did Nurse Trzebiatowski refuse to ensure that Hawkinson had the care and treatment needed.

Specifically, on October 15, 2021, Nurse Trzebiatowski say Hawkinson for complaints of worsening palpitations and swelling of his left leg and evaluated him for urinary concerns, including hematuria and this was addressed due to the potential for urgent care need. The additional evaluation is significant, as Nurse Trzebiatowski was seeing Hawkinson for the documented

complaint – palpitations and leg swelling. Not only did she appropriately treat him for those concerns, but also identified other issues that warranted a more immediate evaluation, and then did so. She ordered medication changes, monitoring of blood pressure, and educated Hawkinson regarding medication. This is certainly not deliberate indifference to any medical conditions.

Hawkinson complaints, however, that during this visit he asked about neck pain, and Nurse Trzebiatowski did not provide a comprehensive evaluation of that issue. However, at the October 15, 2021 visit, this was not a documented reason for the appointment, and it was not any acute issue that warranted immediate care. It is completely unfounded to claim that not treating every single thing raised to a medical provider is deliberate indifference. To conclude so would open innumerate claims in the future that anything a prisoner/patient complained of, and not addressed, gives rise to such a claim. Instead, because the prisoner/patient is never in a position to direct their own medical care, the provider – here Nurse Trzebiatowski – reminded Hawkinson that, to be seen for neck pain, he had to complete a request for appointment for that issue. This is not at all deliberate indifference.

Examining the remaining three visits, there is similarly no basis to claim any deliberate indifference occurred. For example, during the three encounters between May 13, 2022 and November 2, 2022 Nurse Trzebiatowski addressed all issues that were raised by Hawkinson for the purpose of the medical visits, made an outside referral for pain management at Prevea Health, brought Hawkinson's request for Vitamin D to Dr. LaVoie, evaluated Hawkinson's medication effectiveness and adjusted his prescriptions as needed, and instructions given to nursing staff to monitor Hawkinson's blood pressure and caloric intake. These actions are hardly those of a medical provider who "actually knew of and disregarded a substantial risk of harm." *See Petties*, 836 F.3d at 728 (*citing Farmer*, 511 U.S. 825, 837, 114 S.Ct. 1970).

Here, Nurse Trzebiatowski was never deliberately indifference to any medical need of Hawkinson, serious or otherwise. There is no basis to sustain a claim for deliberate indifference against her, and therefore Summary Judgment should be granted in her favor.

## II. THE PLAINTIFF'S CLAIM AGAINST VIRGINIA TRZEBIATOWSKI FAILS AS A MATTER OF LAW BECAUSE EXPERT TESTIMONY IS REQUIRED TO PROVE CLAIMS OF PROFESSIONAL NEGLIGENCE FOR MEDICAL TREATMENT AND DELIBERATE INDIFFERENCE AND THE PLAINTIFF HAS NONE TO OFFER IN THIS CASE

Hawkinson claims that Nurse Trzebiatowski failed to provide adequate care by way of referral to an outside provider is tantamount to deliberate indifference under the Eighth Amendment. To prove this claim Hawkinson requires medical expert testimony.

To establish an Eighth Amendment claim for deliberate indifference to serious medical needs, a plaintiff must show that he suffered from an objectively serious medical condition and a defendant was deliberately indifferent to this medical need. *See, e.g. Wilson v. Adams,* 901 F.3d 816, 820 (7th Cir. 2018). The Seventh Circuit Court of Appeals has noted that cases allege deliberate indifference with respect to providing medical care, or that allege a failure to treat, require "an assessment of the adequacy of the treatment that [a patient] did receive, a question that will likely require expert testimony." *Greeno v. Daley*, 414 F.3d 645, 658 (7th Cir. 2005) (*citing Swofford v. Mandrell,* 969 F.2d 547, 552 (7th Cir.1992) (pointing out that "difficult and subtle question" of state of mind required for deliberate indifference is too complex for pro se plaintiff to understand and present to jury)).

The objectively "serious medical need" is a medical condition that requires treatment as recognized by a doctor or a medical need for which the necessity of treatment would be obvious to a layperson. *Johnson v. Snyder*, 444 F.3d 579, 584-85 (7th Cir. 2006). The plaintiff must demonstrate that the failure to treat the serious medical need has caused him injury or a serious

risk of injury, no matter how serious the condition. *Jackson v. Pollion*, 733 F.3d 786, 789– 90 (7th Cir. 2013).

"Deliberate indifference" in the prison context requires that the official is both aware the prisoner needs medical treatment to avoid objectively serious harm and makes the conscious decision to fail to take reasonable measures. *Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir. 1997). If the prison official does fail to relieve the significant risk of harm that the official "should have perceived" but did not, there is no liability under the Eighth Amendment. *Whiting v. Marathon Cty. Sheriff's Dep't*, 382 F.3d 700, 704 (7th Cir. 2004).

In this case, Hawkinson does not have any expert medical evidence to present to prove the essential elements of his claim that he: 1. Had a serious medical need; and 2. That Nurse Trzebiatowski was specifically deliberately indifferent to that need. Because he cannot prove these elements of his claim, it is a further basis for which summary judgment should be granted in favor of Nurse Trzebiatowski. In this case, at no time during Nurse Trzebiatowski's treatment of Hawkinson or participation in his care did she ignore signs or symptoms of disease or injury or deliberately refuse or fail to provide medical treatment. As a qualified medical provider Nurse Trzebiatowski is qualified to offer such an opinion in her own defense. The Plaintiff in this case has no evidence to the contrary, and indeed will never present any, as the care given by Nurse Trzebiatowski on the four occasions when she saw Hawkinson was well within the standard of care for medical care, and not even remotely akin to deliberately indifferent to his medical needs.

## III. RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO DEFENDANT NURSE TRZEBIATOWSKI

The Plaintiff's Motion for Summary Judgment and accompanying supportive documents do not establish any evidentiary facts, and therefore are not sufficient for any finding of Summary Judgment in his favor. Moreover, any allegations made in the Plaintiff's Summary Judgment


Case 2:23-cv-00634-PP Filed 04/04/25 Page 15 of 25 Document 97

pleadings are clearly disproven in the present Motion and supporting evidentiary facts presented. For these reasons the Plaintiff's Motion should be denied.

In the Plaintiff's Declaration, there are very few allegations made with respect to Nurse Trzebiatowski. (*See* Pltff. Dec., Doc. 74.) In one statement, without citing to records or any evidentiary support from a medical professional, the Plaintiff claims that Nurse Trzebiatowski failed to provide care or evaluation for neck and back pain on an undated occasion, and that the conditions were "additional signs of heart failure." (Id. at ¶ 13.) First, there is no basis in any evidentiary fact that neck and back pain are signs of heart failure generally, or that they were signs of heart failure in this patient. Second, there was one occasion, on October 15, 2021, Hawkinson was seen for chest palpitations and leg swelling. (DPFOF ¶ 21.) During that visit, Hawkinson did in fact inquire about a prior medical concern of back pain. (DPFOF ¶ 22.) Nurse Trzebiatowski explained to Hawkinson at that time that the October 15, 2021 visit would specifically address his complaints of palpitations and leg swelling, and not any undocumented non-urgent medical concerns. (DPFOF ¶ 22.) Insofar as the Plaintiff alleges that Nurse Trzebiatowski did not address cardiac issues or signs of heart failure – that is patently false. As to the argument that Nurse Trzebiatowski did not address neck or back pain at the visit, that is not evidence of either a serious health concern or deliberate indifference. Most notably, Hawkinson was aware of the process to be seen for a medical concern at GBCI, and also aware that, despite his multiple attempts with providers, patients do not direct the care they are given by providers. Instead, they are seen for documented (written) complaints, or any acute issues that is identified in a visit. Here, Nurse Trzebiatowski actually evaluated Hawkinson for an additional issue that arose during the October 15, 2021 visit - urinary concerns, including hematuria – as they presented a possibility for a more emergent care. (DPFOF ¶ 23.) There was in no way any deficiency of care, or action by Nurse Trzebiatowski that gives rise to a claim for deliberate indifference.

The vague allegations made in the Plaintiff's Brief (Doc. 73) are nearly impossible to address, as they do not reference any proposed findings of fact or any evidentiary documentation. Rather, these are mere unsupported allegations made about care or treatment rendered, or not rendered, by Nurse Trzebiatowski. For example, the Plaintiff alleges that Nurse Trzebiatowski refused to see the Plaintiff for follow-up pain control measures (Doc. 73, p. 6) but Nurse Trzebiatowski actually referred Hawkinson to an outside provider for his pain complaints. (DPFOF ¶ 34.) The Plaintiff also makes conclusory arguments in his Brief (Doc. 73) that Nurse Trzebiatowski and other Defendants knowingly violated "laws and constitutional amendments." Again – it is entirely unclear about what the Plaintiff refers. The Plaintiff also argues that Nurse Trzebiatowski's "Admission answers appear to be making the claim of ignorance." The only logical inference here is that Hawkinson is referring to Nurse Trzebiatowski's Answer to the Amended Complaint in this case. There is no reference to any admission made with respect to the actual elements of the Plaintiff's deliberate indifference claim.

Here, the Plaintiff has failed to offer actual evidence of deliberate indifference to any mediation condition on the part of Nurse Trzebiatowski. In failing to do so, his Motion for Summary Judgment is deficient. Moreover, in her own Motion, Nurse Trzebiatowski has conclusively established that on the 4 occasions that she saw Hawkinson for a medical appointment, she not only acted without indifference to any serious medical need, but provided appropriate and sound medical care that met or even exceeded the standard of care required of a practitioner in the same or similar circumstance. There is no basis in law of fact for the Plaintiff's Motion, and therefore it should be denied.

## CONCLUSION

The Plaintiff cannot meet his burden of proof in this case. He does not have the requisite expert testimony necessary to prove his claims, which is fatal. Further, there is no dispute of material fact as to whether a serious medical need was disregarded by Nurse Trzebiatowski. The Plaintiff's own Motion fails to cite any evidence to support his claims, and no evidence available can rebut the fact that Nurse Trzebiatowski provided appropriate medical care during the four interactions she had with Trzebiatowski. As a matter of law, judgment should be entered in favor of Defendant Trzebiatowski, and all claims against her dismissed with prejudice.

Dated at Green Bay, Wisconsin, this 4th day of April, 2025

EVERSON, WHITNEY,
EVERSON & BREHM, S.C.

Attorneys for Defendant,
Virginia Trzebiatowski

By: *<u>/s/ Brian D Anderson</u>*
Brian D. Anderson

P. O. ADDRESS:
P. O. Box 22248
Green Bay, WI 54305-2248
(920) 435-3734
Attorney Bar No. 1114758
banderson@eversonlaw.com
BDA:wld313-25

**NOTICE: Pursuant to Civil L. R. 56(a)(1)(B) the text to Fed. R. Civ. P. 56 (c),(d), and (e), Civil L. R. 56(a), Civil L. R. 56(b), and Civil L. R. 7 must be part of the motion, and are appended hereto.**

**Civil L. R. 7. Form of Motions and Other Papers**

**(a) Form of Motion and Moving Party's Supporting Papers.** Every motion must state the statute or rule pursuant to which it is made and, except for those brought under Civil L. R. 7(h) (Expedited Non-Dispositive Motion Practice), must be accompanied by:

**(1)** a supporting memorandum and, when necessary, affidavits, declarations, or other papers; or

**(2)** a certificate stating that no memorandum or other supporting papers will be filed.

**(b) Non-Moving Party's Response.** For all motions other than those for summary judgment or those brought under Civil L. R. 7(h) (Expedited Non-Dispositive Motion Practice), any memorandum and other papers in opposition must be filed within 21 days of service of the motion. Failure to respond to the motion may result in the Court deciding the motion without further input from the parties.

**(c) Reply.** For all motions other than those for summary judgment or those brought under Civil L. R. 7(h) (Expedited Non-Dispositive Motion Practice), the moving party may serve a reply memorandum and other papers within 14 days from service of the response memorandum.

**(d) Sanction for Noncompliance.** Failure to comply with the briefing requirements in Civil L. R. 7(a)-(b) may result in sanctions up to and including the Court denying or granting the motion. Sanctions remain available under General L. R. 83(f).

**(e) Oral Argument.** The Court will hear oral argument at its discretion.

**(f) Length of Memoranda.** Subject to the limitations of Civil L. R. 7(h) (Expedited Non-Dispositive Motion Practice) and Civil L. R. 56 (Summary Judgment Motion Practice), the principal memorandum in support of, or in opposition to, any motion must not exceed 30 pages and reply briefs must not exceed 15 pages (excluding any caption, cover page, table of contents, table of authorities, and signature block). No memorandum exceeding the page limitations may be filed unless the Court has previously granted leave to file an oversized memorandum.

**(g) Modification of Provisions in Particular Cases.** The Court may provide by order or other notice to the parties that different or additional provisions regarding motion practice apply.

**(h) Expedited Non-Dispositive Motion Practice.**

**(1)** Parties in civil actions may seek non-dispositive relief by expedited

motion. The motion must be designated as a "Civil L. R. 7(h) Expedited Non-Dispositive Motion." The Court may schedule the motion for hearing or may decide the motion without hearing. The Court may designate that the hearing be conducted by telephone conference call. The Court may order an expedited briefing schedule.

**(2)** The motion must contain the material facts, argument, and, if necessary, counsel's certification pursuant to Civil L. R. 37. The motion must not exceed 3 pages excluding any caption and signature block. The movant may not file a separate memorandum with the motion. The movant may file with the motion an affidavit or declaration for purposes of (1) attesting to facts pertinent to the motion and/or (2) authenticating documents relevant to the issue(s) raised in the motion. The movant's affidavit or declaration may not exceed 2 pages. The respondent must file a memorandum in opposition to the motion within 7 days of service of the motion, unless otherwise ordered by the Court. The respondent's memorandum must not exceed 3 pages. The respondent may file with its memorandum an affidavit or declaration for purposes of (1) attesting to facts pertinent to the respondent's memorandum and/or (2) authenticating documents relevant to the issue(s) raised in the motion. The respondent's affidavit or declaration may not exceed 2 pages. No reply brief is permitted absent leave of Court.

**(3)** The provisions of subsection (h) do not apply to 42 U.S.C. § 1983 actions brought by incarcerated persons proceeding pro se.

**(i) Leave to file paper.** Any paper, including any motion, memorandum, or brief, not authorized by the Federal Rules of Civil Procedure, these Local Rules, or a Court order must be filed as an attachment to a motion requesting leave to file it. If the Court grants the motion, the Clerk of Court must then file the paper.

**(j) Citations.**

**(1)** With the exception of the prohibitions in Seventh Circuit Rule 32.1, this Court does not prohibit the citation of unreported or non-precedential opinions, decisions, orders, judgments, or other written dispositions.

**(2)** If a party cites an unreported opinion, decision, order, judgment or other written disposition that is not available in a publicly accessible electronic database, the party must file and serve a copy of that opinion, decision, order, judgment, or other written disposition.

**(3)** Service of Copies on Pro Se Parties. If a party cites an unreported opinion, decision, order, judgment or other written disposition, the party must file and serve a copy of that opinion, decision, order, judgment, or other written disposition on pro se parties regardless of whether it is available in a publicly accessible electronic database.

**(k) Notice of Supplemental Authority.** If pertinent and significant authorities relevant to an issue raised in a pending motion come to a party's attention after a party's final brief on the motion has been filed, the party may file a Notice of Supplemental Authority, attaching the new authority, without leave of the court. The Notice of Supplemental Authority may not contain any argument but may identify the page or section in the filed briefs to which the authority is relevant.

*Committee Comment: The rule expressly allows the Court to expand the page count if needed, but it does not allow the filing of a memorandum longer than permitted by Civil L. R. 7 unless the Court grants leave before the memorandum is filed. See Civil L. R. 7(g) and (i).*

*The rule also makes clear that declarations made in compliance with 28 U.S.C. § 1746 may be used to the same effect as affidavits in supporting motions.*

*Civil L. R. 7(d) allows the Court to take adverse action if the Court construes the party's lack of response as an "intent to abandon suit or as meriting a sanction." Marcure v. Lynn, 992 F.3d 625, 631 (7th Cir. 2021). When the moving party bears the burden of proof, a failure to respond to the motion—standing alone—does not provide sufficient grounds to grant or deny the motion. Id.; see also Robinson v. Waterman, No. 20-1370, 2021 WL 2350875, *2 (7th Cir. June 9, 2021).*

*Civil L. R. 7(i) addresses the filing of papers, including motions or memoranda, for which leave to file is required. The rule provides that any paper, which may not be filed without the Court's first granting leave to file, must be attached to the motion seeking leave to file that paper. If the Court grants leave to file, the Clerk of Court must then file the paper.*

*Civil L. R. 7(j) addresses "unreported" or non-precedential authorities. The provision permits the citation of authorities in addition to those reported in printed national reporters, with the exception of orders whose citation and consideration is prohibited by Seventh Circuit Rule 32.1. If the authority is publicly accessible (i.e. Westlaw, Lexis, Pacer, FastCase), a copy need not be filed and served on all parties, unless a party is pro se. If a party is pro se, then "unpublished" or "non-precedential" authority must be served on the pro se litigant. Notably, with the exception of orders subject to Circuit Rule 32.1, this provision does not bar the citation of decisions or orders even if a rule would bar the citation of the decision to the court that issued the decision or to any other court. The Court may take limitations on the authority's use before other courts, as well as the "unpublished" or "non-precedential" nature of the authority, into consideration when deciding the weight, if any, to be afforded to the authority.*

*Civil L. R. 7(k) addresses the Notice of Supplemental Authority. The Notice of Supplemental Authority should be submitted in the following format: "[Case name and citation], is relevant to [page or section] of [title of brief, ECF No_]." The rule does not contemplate a response by any party absent extraordinary circumstances.*

**Civil L. R. 56. Summary Judgment.**

**(a) Pro Se Litigation.**

**(1)** If a party is proceeding pro se in civil litigation and the opposing party files a motion for summary judgment, counsel for the movant must comply with the following procedure:

**(A)** The motion must include a short and plain statement that any factual assertion in the movant's affidavit, declaration, or other admissible documentary evidence will be accepted by the Court as being true unless the party unrepresented by counsel submits the party's own affidavit, declaration, or other admissible documentary evidence contradicting the factual assertion.

**(B)** In addition to the statement required by Civil L. R. 56(a)(1)(A), the text to Fed. R. Civ. P. 56 (c),(d), and (e), Civil L. R. 56(a), Civil L. R. 56(b), and Civil L. R. 7 must be part of the motion.

**(2)** This procedure also applies to motions to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6) or motions for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) where matters outside the pleadings are presented to the Court.

**(b) Additional Summary Judgment Procedures.** Motions for summary judgment must comply with Fed. R. Civ. P. 56 and Civil L. R. 7. In addition, with the exception of Social Security reviews, other actions for review of administrative agency decisions, and other actions in which a judge relieves the parties of this Rule's requirements, the following must be met:

**(1) Moving Party's Principal Materials in Support of Motion**. With each motion for summary judgment, the moving party must file:

**(A)** a memorandum of law;

**(B)** a statement setting forth any material facts to which all parties have stipulated;

**(C)** a statement of proposed material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law;

**(i)** the statement shall consist of short numbered paragraphs, each containing a single material fact, including within each paragraph specific references to the affidavits, declarations, parts of the record, and other supporting materials relied upon to support the fact described in that paragraph;

**(ii)** a moving party may not file more than 150 separately numbered statements of fact;

**(iii)** failure to submit such a statement constitutes grounds for denial of the motion; and

**(D)** any affidavits, declarations, and other materials referred to in Fed. R. Civ. P. 56(c).

**(2) Opposing Party's Materials in Opposition**. Each party opposing a motion for summary judgment must file within 30 days of service of the motion and the materials required by subsection (b)(1), above:

**(A)** a memorandum of law;

**(B)** a concise response to the moving party's statement of facts that must contain:

**(i)** a reproduction of each numbered paragraph in the moving party's statement of facts followed by a response to each paragraph, including, in the case of any disagreement, specific references to the affidavits, declarations, parts of the record, and other supporting materials relied upon, and

**(ii)** a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, declarations, parts of the record, and other supporting materials relied upon to support the facts described in that paragraph. A non-moving party may not file more than 100 separately-numbered statements of additional facts. Each separately-numbered paragraph shall be limited to one material fact; and

**(C)** any opposing affidavits, declarations, and other materials referred to in Fed. R. Civ. P. 56(c).

**(3) Moving Party's Materials in Reply.** A moving party may file within 14 days of the service of the opposing party's materials under subsection (b)(2), above:

**(A)** a reply memorandum;

**(B)** a reply to any additional facts submitted by the opposing party pursuant to subsection (b)(2) above, in the form prescribed in section (b)(2)(B)(i) above; and

**(C)** any affidavits, declarations, and other materials referred to in Fed. R. Civ. P. 56(c) submitted in reply.

**(4) Effect of Uncontroverted Statements of Fact.** The Court will deem uncontroverted statements of material fact admitted solely for the purpose of deciding summary judgment.

**(5) Stipulated Facts.** Parties are encouraged to stipulate to facts. Facts so stipulated will not count against any party's allotment of proposed facts and do not require references to evidentiary support.

**(6) Citations to Facts in Memoranda.** Assertions of fact in the parties' supporting memoranda must refer to the corresponding numbered paragraph of the statement of facts, statement of additional facts, or statement of stipulated facts.

**(7) Prior Leave of Court Required to Increase the Number of Statements of Fact or Statements of Additional Fact.** A party may not file any proposed statements of material fact or statements of additional fact in excess of the limit set forth in this rule unless the Court previously has granted leave upon a showing that an increase is warranted.

**(8) Length of Memoranda.**

**(A)** A principal memorandum in support of, or opposition to, summary judgment must not exceed 30 pages and a reply memorandum must not exceed 15 pages (excluding any caption, cover page, table of contents, table of authorities, and signature block).

**(B)** No memorandum exceeding the page limitations may be filed unless the Court previously has granted leave to file an oversized memorandum.

**(9) Sanction for Noncompliance.** Failure to comply with the requirements in this rule may result in sanctions up to and including the Court denying or granting the motion. Sanctions remain available under General L. R. 83(f).

**(10) Collateral Motions.** Collateral motions, such as motions to strike, are disfavored.

Committee Comment: *New Civil L. R. 56 replaces former Civil L. R. 56.1 and 56.2. The additional summary judgment procedures have been modified to limit the number of proposed statements of material fact. Moving parties are limited to 150 separately numbered proposed statements of material fact, and non-moving parties are limited to 100 separately numbered proposed statements of additional material facts. Stipulated statements of facts are not counted against any party's allotment and do not require evidentiary support. The rule expressly provides that the Court may increase the allowed number of proposed material facts upon a showing that an increase is warranted.*

*Civil L. R. 56(b)(2)(B) anticipates that the parties will respond to each statement of proposed material fact by either: (i) admitting the fact; (ii) denying the fact; or (iii) stating an objection. The preferred practice is to include arguments in support of objections in the memoranda of law and not in the responses to the proposed statements of material fact. The response should not simply incorporate a response to an earlier numbered paragraph.*

*Civil L. R. 56(b)(10) clarifies that collateral motions in the summary judgment process, including motions to strike, are disfavored. Whenever possible all arguments relating to the other party's submissions should be contained in memoranda.*

*Civil L. R. 56, like Civil L. R. 7, also makes clear that declarations made in compliance with 28 U.S.C. § 1746 may be used in the summary judgment process to the same effect as affidavits.*