IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

---

DAVID R. HAWKINSON,

Plaintiff,

v. Case No. 23-CV-0634

HANNAH UTTER,
DEREK HENNING,
JENNIFER KILMER,
ELLYN BAKER,
ALAN DEGROOT,
STEVEN BOST,
LARISSA SOQUET YONASH,
RACHEL COTTON,
VIRGINIA TRZBIATOWSKI,
CHRISTOPHER STEVENS,

State Defendants.

---

**STATE DEFENDANTS' BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

---

Plaintiff David Hawkinson (Hawkinson), an inmate at Green Bay Correctional Institution (Green Bay), has been allowed to proceed on Eighth Amendment deliberate indifference claims against several Green Bay staff, herein, the "State Defendants." (Dkt. 19.) He alleges that seven health care staff delayed his medical care and turned a blind eye to his alleged mistreatment by APNP Virgina Trzebiatowski. (Dkts. 19:16; 19:13.) Those health care staff are former HSM Utter and RNs Baker, Bost, Cervantes, Cotton, Henning, and Kilmer. (Dkt. 19.) He also alleges that a complaint examiner, DeGroot, completed an erroneous investigation of

his complaints causing further delay and denial in his medical care. (Dkt. 19:12.) Finally, he alleges that the Warden of Green Bay, Stevens, knew of his ongoing painful medical conditions and had the ability to help him, but did not do so. (Dkt. 32:8-10.) Hawkinson's claims are baseless and should be dismissed.

For the reasons set forth below, the Court should grant summary judgment to the State Defendants and dismiss the claims against them with prejudice.

## INTRODUCTION

Hawkinson's should be dismissed. The State Defendants were not aware of any mistreatment by APNP Trzebiatowski. In addition, Hawkinson did not face any delay in care. In December 2021, Hawkinson received an epidural steroid injection (ESI) at Aurora. At that time, Aurora did not indicate when he should receive the next one, or if another was needed again. Absent any such indication, Hawkinson's providers at Green Bay would follow up with him and determine the necessity of another ESI. But the record indicates that Hawkinson was not in pain in the subsequent months, or he could tolerate it.

Per an order entered January 24, 2022, Hawkinson was due for a six-month follow up in July 2022. Hawkinson requested another ESI therefore a consult to pain services was made for October 2022 – the soonest available date – to determine the necessity of another ESI. In October 2022, pain services recommended that Hawkinson receive another ESI, however, for the next five months, Green Bay ran into scheduling issues with the offsite providers who required a recent MRI or that Hawkinson obtain 4 weeks of physical therapy before they could schedule his ESI.

Green Bay obtained a new MRI in March 2023, and Hawkinson then received his ESI in April 2023.

Finally, Hawkinson's deliberate indifference claims fail because DeGroot relied on his investigation in recommending a dismissal of Hawkinson's inmate complaints; Warden Stevens did not fail to act; Utter did not turn a blind eye to Hawkinson's care; and the RN defendants responded appropriately to Hawkinson's health service requests.

## STATEMENT OF FACTS

State Defendants incorporate by reference their Proposed Undisputed Facts, filed with this brief and motion. (SDPFOF[1] ¶¶ 1-150.)

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is an "integral part of the Federal rules," and its purpose "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 327 (1986). A court's decision to grant summary judgment "is not discretionary"—when "a moving party shows that the opposing party lacks evidence to support each element of a claim, summary judgment must be granted in favor of the movant." *Baron v. Frederickson*, 419 F. Supp. 2d 1056, 1063 (W.D. Wis. 2006).

[1] State Defendants' Proposed Findings of Fact.

"By its very terms," the summary judgment standard "provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A "material" fact is one that, under the applicable substantive law, "might affect the outcome of the suit." *Id.* at 248. The "materiality determination rests on the substantive law" because it identifies "which facts are critical and which facts are irrelevant." *Id.* A dispute over a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

"The party moving for summary judgment has the initial burden of demonstrating there is no genuine dispute of material fact: 'it may discharge this responsibility by showing "that there is an absence of evidence to support the nonmoving party's case."'" *Bunn v. Fed. Deposit Ins.*, 908 F.3d 290, 295 (7th Cir. 2018). Once the movant satisfies his initial responsibility, the burden then shifts to the nonmovant, who must "come forward with specific facts demonstrating that there is a genuine issue for trial." *Id.*; *see also Celotex*, 477 U.S. at 324 ("[R]ule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"). A nonmovant is "entitled to all reasonable inferences in his favor, but 'inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion.'" *Lavite v. Dunstan*, 932 F.2d 1020, 1029 (7th Cir. 2019).

## ARGUMENT

### I. HAWKINSON'S EIGHTH AMENDMENT DELIBERATE INDIFFERENCE CLAIMS AGAINST THE STATE DEFENDANTS MUST BE DISMISSED.

The standards governing Hawkinson's Eighth Amendment claims are well established. The Eighth Amendment, made applicable to the states by the Fourteenth Amendment, protects prisoners against "grossly inadequate medical care." *Pyles v. Fahim*, 771 F.3d 403, 409-10 (7th Cir. 2014). In order to establish an Eighth Amendment claim based on deficient medical care, the plaintiff must demonstrate two elements: (1) an objectively serious medical condition; and (2) an official's deliberate indifference to that condition. *Id.*

The first element, an objectively serious medical condition, is satisfied if a doctor has diagnosed the condition as requiring treatment, or the need for treatment would be obvious to a layperson. *Pyles*, 771 F.3d at 409. Moreover, "in cases where prison officials delayed rather than denied medical assistance to an inmate, courts have required the plaintiff to offer 'verifying medical evidence' that the delay (rather than the inmate's underlying condition) caused some degree of harm." *Jackson v. Pollion,* 733 F.3d 786, 790 (7th Cir. 2013) (quoted source omitted). "Some injury" separate from the underlying medical condition is required. *Lord v. Beahm*, 952 F.3d 902, 904 (7th Cir. 2020); *see Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996) ("An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed.")

A mere delay in obtaining care for a prisoner does not rise to the level of a constitutional violation if the delay was not material because it did not result in any harm to the plaintiff. *See id.* Prisoner plaintiffs asserting such claims must come forward with some evidence that the delay caused some degree of additional harm. *Jackson v. Pollion*, 733 F.3d 786, 790 (7th Cir. 2013). "[N]on-expert evidence is sufficient as long as it permits the fact-finder to determine whether the delay caused additional harm." *Jackson v. Sheriff of Winnebago Cnty., Illinois*, 74 F.4th 496, 500–01 (7th Cir. 2023) (quoting *Ortiz v. City of Chicago*, 656 F.3d 523, 535 (7th Cir. 2011)).

A prison employee's failure to obtain immediate medical care for an inmate constitutes an Eighth Amendment violation only "if the delay was 'objectively, sufficiently' serious to constitute the 'denial of the minimal civilized measures of life's necessities.'" *Langston*, 100 F.3d at 1240. "Delay is not a factor that is either always, or never, significant. Instead, the length of delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment." *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010).

The second element, whether the officials acted with deliberate indifference, is a subjective standard. *Pyles*, 771 F.3d at 409. An official is deliberately indifferent if that official was aware that the prisoner faced a substantial risk of serious harm but disregarded the risk by consciously failing to take reasonable measures to address it. *Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir. 1997); *Farmer v. Brennan* 511 U.S. 825, 847 (1994). A plaintiff faces an uphill battle when raising a deliberate indifference claim, as liability requires "[s]omething more than negligence or even malpractice."

*Pyles*, at 409. Rather, an inmate must meet "essentially a criminal recklessness standard, that is, ignoring a known risk." *McGee v. Adams*, 721 F. 3d 474, 481 (7th Cir. 2013) (citation omitted). Because the standard is subjective, it is "not enough that there was a danger of which a prison official objectively should have been aware." *Estate of Novack ex rel. Turbin v. Cnty. of Wood*, 226 F.3d 525, 529 (7th Cir. 2000). Instead, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Davis v. Kayira*, 938 F.3d 910, 915 (7th Cir. 2019).

Relatedly, it is axiomatic that "[f]or constitutional violations under § 1983, 'a government official "is only liable for his or her own misconduct."'" *Taylor v. Ways*, 999 F.3d 478, 493 (7th Cir. 2021) (quoted source omitted). It follows that an official is only liable if "she was personally involved in the constitutional violation." *Id.* In a similar vein, "defendants cannot be [held liable under the Eighth Amendment] if the remedial step was not within their power"—that is, if they have no knowledge of or power to cure the violation. *Miller v. Harbaugh*, 698 F.3d 956, 962 (7th Cir. 2012).

As explained in the following subsections, Hawkinson's Eighth Amendment claims fail because 1) Hawkinson did not have an objectively serious medical condition; and 2) the State Defendants were not aware of nor disregard an excessive risk of harm to Hawkinson's safety or health.

Additionally, the State Defendants are entitled to qualified immunity.

**A. Hawkinson's Eighth Amendment claim against all State Defendants must be dismissed because he did not have an objectively serious medical condition.**

Hawkinson's Eighth Amendment claims must be dismissed. In the context of "delayed" medical care, "some injury" separate from the underlying medical condition is required. *Lord* at 904; *see Langston* at 1240. But Hawkinson did not suffer any degree of additional harm due to the alleged delay. (SDPFOF ¶ 107.) The record shows that his neck and back pain was chronic, and the ESI was only meant to provide relief – not treat the underlying reason for his pain. (*Id.*, ¶ 108.) In other words, some chronic pain conditions can only be managed but there is no way to "cure" them. Without the relieving effect of an ESI during the alleged 17 months, Hawkinson simply experienced a return to the same degree of pain, which is not material for this analysis, because courts look for verifying evidence of "additional" or "separate harm" caused by the alleged delay. *See Langston* at 1240 (A mere delay in obtaining care for a prisoner does not rise to the level of a constitutional violation if the delay was not material because it did not result in any harm to the plaintiff.) Thus, Hawkinson cannot satisfy the objective prong of his Eighth Amendment claims, and those claims must be dismissed.

Further, no reasonable jury could find that Hawkinson faced an excessive risk to his health or safety. After obtaining his ESI in December 2021, it is undisputed that Hawkinson did not request another one on January 24, 2022 nor on May 13, 2022 despite those being his two opportunities to do so. (SDPFOF ¶¶ 55, 62.) Those appointments were with an ACP who can order the consult, therefore those would have been the correct times to request an ESI. (*Id.*, ¶¶ 55, 62, 14.) His failure to do so means his neck and back pain were not in such severe pain that he "required

treatment." *Pyles*, 771 F.3d at 409. In fact, Hawkinson reported to Dr. Daughtry in February 2023, that he worked doing sewing at BCI. (SDPFOF ¶ 85.) His ability to maintain employment despite not receiving an ESI for a year proves that his pain did not "significantly affect[] [his] daily activities," *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997), or "[cause] significant pain," *Cooper v. Casey*, 97 F.3d 914, 916–17 (7th Cir. 1996).

Likewise, for his low back pain, records indicate that physical therapy was ordered, but Hawkinson did not comply with the home exercise program (SDPFOF ¶ 106) here too showing he could tolerate the pain and he did not "require treatment." *Pyles*, at 409.

On these facts, it cannot be said that Hawkinson's neck and back pain were an objectively serious medical condition. Hawkinson's Eighth Amendment claim fails on the objective prong, and his claim against all State Defendants must be dismissed.

### B. Hawkinson's Eighth Amendment claim against all State Defendants must be dismissed because the State Defendants were not aware of nor disregard a serious medical need.

Even assuming *arguendo* that Hawkinson had an objectively serious medical condition, his Eighth Amendment claim must be dismissed because the State Defendants were not aware of nor disregard Hawkinson's neck and back pain.

#### (1) DeGroot was not aware of nor disregard a serious medical need with regards to Hawkinson's neck and back pain.

Hawkinson claims that DeGroot erroneously decided Hawkinson's inmate complaints and caused additional care delay. This claim has no merit for these three reasons: (1) DeGroot did not decide Hawkinson's inmate complaints; (2) Hawkinson

falsely presumes that he could have obtained redress in the form of a sooner appointment if DeGroot made a different recommendation;[2] (3) DeGroot thoroughly investigated Hawkinson's complaints.

First, DeGroot does not issue decisions on inmate complaints. As the Institution Complaint Examiner (ICE), DeGroot only recommends affirmance or dismissal of a complaint to the Reviewing Authority (RA) who then issues a decision. (SDPFOF ¶¶ 110-112, 123.) Thus, Hawkinson's claim fails. *Taylor v. Ways*, 999 F.3d 478, 493 (7th Cir. 2021) (quoted source omitted)(An official is only liable if "[he] was personally involved in the constitutional violation.") In fact, the RA is not even required to follow DeGroot's recommendation and uses his or her judgment in deciding an inmate complaint. (SDPFOF ¶¶ 112-113.) Thus, Hawkinson's claim that DeGroot erroneously decided his complaints causing additional delay in his care has no merit.

Second, to the extent Hawkinson claims that DeGroot made an erroneous recommendation in order to avoid ordering redress for Hawkinson, DeGroot has no authority to do so. (*Id.*, ¶ 146.) Only the Unit or the Department that is the subject of an affirmed complaint can order redress. (*Id.*, ¶ 147.) Thus, Hawkinson's claim against DeGroot fails here as well. *Miller*, 698 F.3d at 962 ("defendants cannot be [held liable under the Eighth Amendment] if the remedial step was not within their power"—that is, if they have no knowledge of or power to cure the violation.)

---

[2] DeGroot only acted as the ICE on GBCI-2021-15929 and GBCI-2023-257. (SDPFOF ¶¶ 119-120.)

Finally, DeGroot thoroughly investigated Hawkinson's complaints. This is not a case where "a complaint examiner routinely sent each grievance to the shredder without reading it," which "might be a ground of liability." *Burks v. Raemisch,* 555 F.3d 592, 595 (7th Cir. 2009); *See Greeno v. Daley*, 414 F.3d 645, 655–56 (7th Cir.2005); *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir.1996). Here, DeGroot reached his recommendation after reviewing the record and consulting HSU staff. (SDPFOF ¶¶ 114-119, 121-122.) DeGroot is allowed to do so and thus cannot be found liable. *Burks* at 595 (Inmate complaint examiners are entitled to defer to the expertise of prison medical officials in denying grievances.) Finally, dissatisfaction with the outcome of a grievance does not state a constitution violation. *Id*. (rejecting prisoner's claim against institutional complaint examiner who "carried out her job exactly as she was supposed to.")

Accordingly, Hawkinson's claim that DeGroot erroneously decided his complaints causing additional delay in his care has no merit, and it must be dismissed.

**(2) Stevens was not aware of nor disregard a serious medical need with regards to Hawkinson's neck and back pain.**

Hawkinson alleges that Stevens was deliberately indifferent to his serious medical need because Stevens allegedly knew about it and had the ability to help him, but did not do so. (Dkt. 32:8-10.) Specifically, Hawkinson alleges that Stevens was informed of the delay and the denial of his medical care on two separate occasions; Stevens was responsible for staffing at Green Bay; and Stevens could arrange for

alternate transportation to medical appointments. (Dkt. 32:9-10.) Hawkinson's claims have no merit, and they must be dismissed.

First, to the extent Hawkinson alleges that these claims against Stevens arose between December 2021 and April 2023, they fail and they must be dismissed. Stevens was not the warden of Green Bay during that time therefore Stevens lacks the requisite involvement to be named as a defendant. (SDPFOF ¶ 9.) As stated in the preceding section, an official is only liable if "[he] was personally involved in the constitutional violation." *Taylor* at 493.

Second, assuming Hawkinson is suing Stevens for his involvement after he became the Warden in April 2023, Hawkinson's claims also fail because Stevens was not aware of a serious medical need regarding Hawkinson's neck and back pain. The first time Stevens learned of any complaint about an alleged care delay was in a letter from Hawkinson dated July 10, 2023. (SDPFOF ¶ 130.) Based on the contents of this letter, Stevens understood that Hawkinson was complaining about a pattern of delayed care. (*Id.*, ¶ 135.) Hawkinson wrote that he filed a section 1983 lawsuit after his first inmate complaint was affirmed, but nothing continued to be done. (*Id.*) The mention of an affirmed complaint led Stevens to check Hawkinson's inmate complaint history and Stevens then confirmed that a second inmate complaint was pending.[3] (*Id.*, ¶¶ 131, 135.) Hawkinson's letter was not asking Stevens to take any action, therefore, Stevens advised Hawkinson to wait for the ICE Office to complete the review process for this second complaint through the ICRS. (*Id.*, ¶¶ 130-131, 135.)

---

[3] GBCI-2023-9773 (SDPFOF ¶ 131.)

Hawkinson might try to argue that Stevens' response shows deliberate indifference because as the Warden, Stevens was responsible for the health and safety of the inmates under his care. However, the ICRS exists precisely to address the type of complaints Hawkinson raised through his July 10, 2023 letter. (*Id.*, ¶ 136.) Therefore, there was not a reason for Stevens to usurp that process and address Hawkinson's complaints again through the Warden's office.[4] *Burks*, 555 F.3d at 596 (Government officials cannot be held liable for staying within their job and relying on other employees to do their jobs.)

Even assuming that Hawkinson's letter was asking Stevens to take action, Stevens is not responsible for the implementation of redress on an affirmed complaint.[5] *Miller*, 698 F.3d at 962 ("Defendants cannot be [held liable under the Eighth Amendment] if the remedial step was not within their power.") Typically, the relevant Unit or Department named in an affirmed inmate complaint is responsible for bringing redress but sometimes redress cannot be brought. (SDPFOF ¶ 147.) For instance, if an inmate complains that his appointment with his offsite provider is scheduled too far out, Corrections cannot move up the date because Corrections has no control over the schedule of the offsite provider. (*Id.*) In fact, for medical complaints, Stevens cannot bring redress because he does not have the authority to direct the care of inmates. (*Id.*, ¶ 138.) Stevens is not a health care professional (*Id*) therefore he defers all decisions regarding patient care to the nurses and Advanced

---

[4] SDPFOF ¶ 136.
[5] SDPFOF ¶ 146.

Care Providers (ACPs). *Arnett*, 658 F.3d at 755 (Because these defendants are not medical professionals, they had no duty to intervene with a prescribed course of medical treatment and were "justified in believing that the prisoner [was] in capable hands.")

As to Hawkinson's claim that Stevens could have arranged for his transport to the hospital, it is not clear whether Hawkinson meant specialty care or emergency. Some scheduled medical procedures take place at hospitals. (SDPFOF ¶ 139.) If Hawkinson is referring to specialty care, Stevens does not order inmate transport or alternate transport to medical appointments. (*Id.*) Planned transports to an offsite provider are coordinated by the Scheduling Lieutenant. (*Id.*) If Hawkinson is referring to an emergency transport to the hospital, such transport arrangements are done by the security supervisor on shift such as a captain or a lieutenant. (*Id.*, ¶ 140.)

Finally, Stevens did not fail to properly staff Green Bay. Stevens did not work at Green Bay during the alleged period of December 2021 to April 2023 and is unaware of any nursing or ACP shortage during that time. (*Id.*, ¶¶ 9, 143.) As stated *supra*, an official is only liable if "[he] was personally involved in the constitutional violation." *Taylor*, 999 F.3d at 493. Even assuming that Hawkinson's claim against Stevens begins when Stevens became the Warden of Green Bay, no reasonable jury could find that Stevens was deliberately indifferent. Stevens talks with Human Resources weekly to ensure they are recruiting for all vacant positions at Green Bay. (SDPFOF ¶ 141.) However, it is the Director of Bureau of Health Services (BHS) who works with Human Resources to staff positions for both nurses and ACPs. (*Id.*, ¶ 142.)

HSU and BHS also have no control over staff decision to resign or to transfer to another institution, and staff employment at Green Bay is at-will. (*Id.*, ¶ 144.)

To conclude, Hawkinson's Eighth Amendment claims against Stevens have no merit and they must be dismissed.

**(3) Utter was not aware of nor disregard a serious medical need with regards to Hawkinson's neck and back pain.**

Hawkinson's claim against Utter must be dismissed. First, Utter was not aware of any alleged mistreatment by APNP Trzebiatowski and saw nothing of the sort, therefore there was not a reason to investigate her and Utter did not participate in blocking Hawkinson's care. (*Id.*, ¶¶ 145, 149.)

The only time Utter learned that Hawkinson alleged a treatment delay for his neck and back was after Hawkinson filed inmate complaints GBCI-2023-257 and GBCI-2023-9773. Utter acted as the Reviewing Authority on these complaints. (*Id.*, ¶¶ 126, 128.)

As to GBCI-2023-257, Utter concluded Hawkinson did not face a delay in receiving an ESI for his neck and back. (*Id.*, ¶¶ 127.) Utter reviewed Hawkinson's records and found that the offsite provider did not suggest another ESI after Hawkinson obtained one in December 2021. (*Id.*, ¶¶ 127, 50.) Absent any such indication, Hawkinson's onsite provider would determine the necessity of the next ESI, if one was needed again. (*Id.*, ¶¶ 127, 51-52.)

Per the instructions of the offsite provider, a timely follow-up with an ACP took place on January 24, 2022, and at that time, APNP Wachholz set a 6-month follow up for July 2022. (*Id.*, ¶¶ 127, 50, 55.) Hawkinson did not request another ESI on

January 24, 2022 (*Id.*, ¶¶ 127, 55) nor at his next ACP appointment on May 13, 2022. (*Id.*, ¶¶ 127, 62.)

In August 2022, and per Hawkinson's requests, a consult to pain services was ordered. (*Id.*, ¶¶ 127, 64-68.) The soonest he could be seen based on the offsite provider's schedule was October 14, 2022. (*Id.*, ¶¶ 127, 73.) On October 14, 2022, the offsite provider then recommended another ESI (*Id*), but from October 2022 to February 2023, offsite providers refused to schedule Hawkinson's ESI until he obtained 4 weeks of physical therapy or a recent MRI. (*Id.*, ¶¶ 127, 75, 81-83, 86-89, 91.) HSU staff then worked to obtain an MRI for Hawkinson in March 2023 (*Id.*, ¶¶ 27, 75, 81-83, 86-89, 91, 94) and in April 2023, Hawkinson received his ESI. (*Id.*, ¶¶ 127, 94.)

On these undisputed facts, Hawkinson's claim that Utter was aware of a treatment delay for Hawkinson's neck and back pain has no merit. Utter found no evidence of delay after reviewing his chart and dismissed this complaint. Even viewing all inferences in Hawkinson's favor, Utter did not disregard Hawkinson's neck and back pain. Utter carefully reviewed Hawkinson's medical records prior to deciding this complaint. (*Id.*, ¶ 127.) Thus, Hawkinson's Eighth Amendment claim against Utter has no merit and must be dismissed.

Finally, and as to GBCI-2023-9773, Utter dismissed this complaint on August 8, 2023, because her review of Hawkinson's treatment history revealed that EMG orders were discontinued, therefore there was not a delay in scheduling those. (*Id.*, ¶ 129.) Additionally, a follow-up with Pain Services was pending to discuss his chronic

pain and plan of care. (*Id.*) The provider did not mention the EMG in the last two provider notes on pain. (*Id.*) Physical therapy was also pending. (*Id.*) Thus, Hawkinson's Eighth Amendment claim against Utter has no merit and it must be dismissed.

There is also no merit to Hawkinson's claim that as of May 2023, he had not received any treatment for his lumbar. (Dkt. 19:10.) The record shows that Hawkinson was seen by providers and nurses regularly. (SDPFOF ¶ 109.) He was seen on August 17, 2021, October 21, 2021, January 24, 2022, and on February 10, 2023. (*Id.*, ¶ 105.) He also received a lumber spine x-ray on February 24, 2023, and physical therapy on October 21, 2021 and on November 15, 2021. (*Id.*) A TENS unit was also in effect from November 1, 2021 through April 30, 2022, and from August 11, 2023 through August 10, 2024. (*Id.*) Finally, he also received anti-inflammatories and muscle rubs. (*Id.*, ¶ 109.) For instance, he was ordered lidocaine topical from January 21, 2022 to January 12, 2023; January 3, 2023 to July 1, 2023; and June 27, 2023 to June 16, 2024. (*Id.*) He was ordered acetaminophen from August 26, 2021 to April 21, 2022; April 7, 2022 to March 27, 2023; and March 14, 2023 to February 5, 2024. (*Id.*) He was also ordered naproxen until February 23, 2023. (*Id.*) Lastly, he received a low bunk restriction on September 20, 2021, which stayed in place until September 20, 2022. (*Id.*, ¶ 42.) Thus, Hawkinson's claim that he received no treatment for his lumbar as of May 2023 has no merit, and it must be dismissed.

**(4) The RN Defendants were not aware of nor disregard a serious medical need based on Hawkinson's neck and back pain.**

Hawkinson's claims against the six RN defendants are two-fold. First, he alleges that the six RN defendants had a responsibility to stop APNP Trzebiatowski from causing pain to him, and that they turned a blind eye and allowed her to continue to deny him care. (Dkt. 19:13.) Specifically, he claims that APNP Trzebiatowski failed to timely complete paperwork for him twice causing his ESI to go unscheduled for months. (Dkt. 19:6.)

Second, he alleges that the six RN defendants knew about his neck pain but did not provide him medical care. (Dkt. 19:16.) This appears to be based on health service request forms (HSRs) that Hawkinson claims were not adequately responded to when each of the RN defendants was assigned to triage them.

As to the first claim, none of the RN defendants were aware of any failure by APNP Trzebiatowski to complete offsite paperwork (SDPFOF ¶ 148) therefore this claim fails. *See Farmer*, 511 U.S. at 837 ("[t]he official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference.")

Even assuming that they knew about it, this claim fails because nurses may generally defer to instructions given by physicians. *See, e.g., Poirier v. Gierach,* No. 23-CV-1401-SCD, 2024 WL 4851049, at *7 (E.D. Wis. Nov. 21, 2024) (nurses who did not have "any control" over doctor's treatment not liable under § 1983 because they lacked personal involvement and remedial power); *see also*, *Holloway v. Delaware County Sheriff*, 700 F.3d 1063, 1075 (7th Cir. 2012)("[N]urses may generally defer to

instructions given by physicians" unless "it is apparent that the physician's order will likely harm the patient.")

As to Hawkinson's claim that the six RN defendants knew about his neck pain when they triaged his HSRs but failed to provide him medical care, nurses are not liable "for their handling of [a] plaintiff's grievances." *Jackson v. Murphy*, No. 17-CV-194-PP, 2020 WL 2840126, at *14 (E.D. Wis. June 1, 2020), *aff'd,* 856 F. App'x 625 (7th Cir. 2021). This claim will be addressed separately for each defendant now.

**(5) RN Baker was not aware of nor disregard a serious medical need based on Hawkinson's neck and back pain.**

Hawkinson's Eighth Amendment claims against RN Baker must be dismissed. RN Baker triaged four HSRs written by Hawkinson dated November 20, 2022, December 25, 2022, January 28, 2023, and March 12, 2023. (SDPFOF ¶¶ 77, 80, 84, 93.)

For HSRs in which Hawkinson complained about pain, Baker asked if he wanted to be seen or to be more specific about his pain. (*Id.*, ¶¶ 84, 93.) To receive appropriate care, the inmate must describe his issue with enough specificity. (*Id.*, ¶ 18.) Therefore, Baker's response was appropriate.

For the HSR in which Hawkinson complained about wanting his TENS unit back, Baker informed him she would forward his request for a new TENS unit to the Special Needs Committee (SNC) that decides all special need restrictions. (*Id.*, ¶¶ 77, 38.) Her response was appropriate because nurses cannot approve special need restrictions. (*Id.*, ¶ 38.)

Finally, for the HSR in which Hawkinson asked to be returned on seizure medication, Baker's response that he should discuss this with his provider is appropriate. (*Id.*, ¶¶ 80, 14.) Nurses are not authorized to change medication orders. (*Id.*, ¶¶ 37, 14.) Finally, Baker also informed him that an appointment with his psychiatrist was already scheduled. (*Id.*, ¶ 80.)

On this evidence, therefore, Baker cannot be said to have acted with deliberate indifference. *Pegues v. Hoffmann*, No. 24-1366, 2024 WL 4551541, at *3 (7th Cir. Oct. 23, 2024) (citing *Hunter v. Mueske*, 73 F.4th 561, 566 (7th Cir. 2023) (A nurse "cannot be held liable for failing to do something [they] had no authority to do."); *see also*, *Miller v. Harbaugh*, 698 F.3d 956, 962 (7th Cir. 2012) ("[D]efendants cannot be [held liable under the Eighth Amendment] if the remedial step was not within their power.") Hawkinson's Eighth Amendment claim against Baker must be dismissed.

**(6) RN Bost was not aware of nor disregard a serious medical need based on Hawkinson's neck and back pain.**

Hawkinson's Eighth Amendment claim against RN Bost must be dismissed. RN Bost triaged one HSR from Hawkinson dated February 2, 2022. (SPDFOF ¶ 56.) In it, Hawkinson wrote "I need help with my back. The T2-T3 area is killing me. The treatments on my neck are not working on the thoracic pain. HELP!" (*Id.*) On February 3, 2022, Bost saw that the appointment was showing as "pending" – which means it was in the queue to be scheduled – therefore Bost appropriately responded that Hawkinson had a pending appointment for back pain. (*Id.*, ¶¶ 57, 56.) Bost's response was also appropriate because Bost does not schedule "pending"

appointments (*Id.*, ¶¶ 58, 26, 27), and when he responded to Hawkinson on February 3, 2022, Bost did not know how soon this appointment would be scheduled. (*Id.*, ¶ 32.)

To conclude, Bost cannot be liable "for failing to do something [he] had no authority to do," *Pegues* at *3 (citations omitted), or because "the remedial step was not within his power." *See Miller* at 962. Hawkinson's Eighth Amendment claim against Bost must be dismissed.

**(7) RN Cervantes was not aware of nor disregard a serious medical need based on Hawkinson's neck and back pain.**

Hawkinson's Eighth Amendment claim against RN Cervantes must be dismissed. RN Cervantes triaged one HSR written by Hawkinson dated December 25, 2022. (SPDFOF ¶ 80.) This is the same HSR that RN Baker co-triaged and in which Hawkinson asked to return on seizure medication. (*Id.*) Along with RN Baker, Cervantes informed Hawkinson that this was something he should discuss with his provider. (*Id.*, ¶¶ 80, 14.) This response was appropriate because nurses are not authorized to change medication orders. (*Id.*, ¶¶ 37, 14.) She also informed him an appointment with his psychiatrist was already scheduled. (*Id.*, ¶ 80.)

On this evidence, therefore, Cervantes cannot be liable "for failing to do something [she] had no authority to do," *Pegues* at *3 (citations omitted), or because "the remedial step was not within [her] power." *See Miller* at 962. Hawkinson's Eighth Amendment claim against Cervantes must be dismissed.

**(8) RN Cotton was not aware of nor disregard a serious medical need based on Hawkinson's neck and back pain.**

Hawkinson's Eighth Amendment claim against RN Cotton must be dismissed. RN Cotton triaged one HSR from Hawkinson allegedly written on August 5, 2022. (*Id.*, ¶ 66.) In it, Hawkinson wrote "I Do Not need a sick call, you already have MRI showing I have a condition that will never heal and will need constant treatment. If it is $7.50 you need, take it and send me for the epidural in my cervical spine." (*Id.*) Although Hawkinson wrote a date of "August 5, 2022" on this HSR, Cotton did not receive this HSR until September 6, 2022. (*Id.*) HSRs are collected daily from the housing units and HSU aims to respond to them within 24 hours. (*Id.*, ¶ 20.) Therefore, it is unlikely that Hawkinson wrote it on August 5, 2022.

In any case, Cotton responded appropriately. Cotton informed Hawkinson that his provider ordered a referral to Pain Services. (*Id.*, ¶ 66.) This is the referral APNP Trzebiatowski ordered on August 26, 2022 and which led to a consult with Prevea Pain Services in October 2022 to decide the need for another ESI. (*Id.*, ¶¶ 68, 73.) Thus, Cotton's response was appropriate.

Finally, to the extent Hawkinson alleges that Cotton should have moved up his October 2022 offsite consult, Hawkinson's claim also fails. Cotton cannot schedule offsite appointments (*Id.*, ¶ 32) and thus she cannot be liable "for failing to do something [she] had no authority to do," *Pegues* at *3 (citations omitted), or where "the remedial step was not within [her] power." *See Miller* at 962. Hawkinson's Eighth Amendment claim against Cotton must be dismissed.

**(9) RN Henning was not aware of nor disregard a serious medical need based on Hawkinson's neck and back pain.**

Hawkinson's Eighth Amendment claim against RN Henning must be dismissed. RN Henning triaged five HSRs and one Interview/Information request from Hawkinson dated January 19, 2022, June 2, 2022, July 18, 2022, December 7, 2022, December 21, 2022, and March 8, 2023. (SDPFOF ¶¶ 54, 63, 64, 78, 74, 92.)

For the January 19, 2022 HSR, Hawkinson complained about his back pain and asked why he couldn't get treatment. (*Id.*, ¶ 54.) The next day, Henning responded that Hawkinson was scheduled for an ACP appointment on January 24, 2022, meaning in only four days. (*Id.*) This response is appropriate, and there is also no truth to Hawkinson's claim that this ACP appointment never happened.

Henning also responded appropriately to the HSR dated June 2, 2022. In it, Hawkinson asked "Why did you change my Naproxen prescription? This was for the pain in my Arm shoulder and neck all of which will never heal, but it is getting worse. Please Refer to MRI of cervical spine." (*Id.*, ¶ 63.) Henning responded that the change in Naproxen was changed due to DOC pharmacy new standards, which nurses such as Henning do not control. (*Id.*, ¶¶ 63, 37.) Although Hawkinson did not ask for an appointment, Henning advised him to "[p]lease let HSU know if you need a sick call." (*Id.*) Therefore, Henning's response was appropriate and does not evince deliberate indifference.

Henning also responded appropriately to the July 18, 2022 HSR. In it, Hawkinson wrote "I need another shot in my neck nothing is helping again." (*Id.*, ¶ 64.) Henning responded, "ACP referral in place pending scheduling if you are in need of RN sick prior to this let HSU know." (*Id.*) Henning's response was appropriate

because it informed Hawkinson that APNP Walchhoz already entered this referral and now only the scheduling was pending. (*Id.*, ¶¶ 55, 65.) As a nurse, Henning does not schedule appointments – the MPAA does – therefore, there was nothing more Henning could add to this HSR. (*Id.*, ¶ 32.) Henning's response was also appropriate because even though Hawkinson did not ask for a nurse sick call, Henning advised him to "let HSU know" "if you are in need of RN sick prior to this," meaning prior to the scheduling of his appointment. (*Id.*, ¶ 64.)

Henning also responded appropriately to Hawkinson's December 7, 2022 HSR. In it, Hawkinson wrote "I feel that hsu is intentionally delaying my epidural and this is causing me agonizing pain on a daily basis. This is causing depression and other mental problems. Why have I not received my epidural[?]" Henning responded "Referral in place, pending scheduling. Appt scheduled to see ACP." (*Id.*, ¶ 78.) Henning responded appropriately because the MPAA was still waiting to hear back from Bellin Hospital at that time (*Id.*, ¶ 81), and the MPAA is entirely reliant on the offsite provider's schedule when it comes to scheduling these appointments. (*Id.*, ¶ 33.)

Henning also responded appropriately to Hawkinson's December 21, 2022 Interview/Information request directed to Utter. In it, Hawkinson wrote:

> "I am having a problem with my neck and back. It is causing me agonizing pain. As of the 22nd of December it will be one year since my last epidural. A shot I am supposed to get every three months. Every time I write HSU it is always the same answer, you have an appointment coming up. In the meantime, it is getting worse. I have had to go on antidepressants because of the pain. Some days it is so bad all I do is go to the bathroom

> and eat. Please tell me what is going on, and why it is taking so long?"

(*Id.*, ¶ 74.) Henning was the triaging nurse that day and responded, "As of 12-5-2023 no more UTTER. We are at the mercy of outside provider schedules and have now switched to Prevea Pain Services." (*Id.*) This response is appropriate because Utter was no longer the HSM at that time, and the MPAA still had not heard back from the offsite provider. (*Id.*, ¶¶ 74, 81.)

Finally, Henning also responded appropriately to the March 8, 2023 HSR. In it, Hawkinson wrote "I still have extreme pain in both arms, hands, and neck. I have not received my injection for pain. What is going on?" (*Id.*, ¶¶ 92.) Henning responded that Hawkinson was scheduled for cervical MRI that month before his "ESI." (*Id.*) This response was appropriate because it was accurate. After running into scheduling issues with the offsite provider, it was decided that the fastest way to comply with their policy was to obtain a recent MRI, then scheduled for March 28, 2023. (*Id.*, ¶¶ 86-90, 94.)

To conclude, there is no merit to Hawkinson's claim that Henning knew about his neck and back pain and failed to act. Henning cannot be liable "for failing to do something [he] had no authority to do," *Pegues* at *3 (citation omitted), or where "the remedial step was not within [his] power." *See Miller* at 962. Hawkinson's Eighth Amendment claim against Henning must be dismissed.

**(10) RN Kilmer was not aware of nor disregard a serious medical need based on Hawkinson's neck and back pain.**

Hawkinson's Eighth Amendment claim against RN Kilmer must be dismissed. RN Kilmer triaged two HSRs from Hawkinson dated March 18, 2022 and November 4, 2022. (*Id.*, ¶¶ 59, 76.) Kilmer responded appropriately.

In the HSR dated March 18, 2022, Hawkinson asked when he was due for another shot in his neck. (*Id.*, ¶ 59.) Kilmer responded no neck injection had been ordered at that time (*Id.*) Her response was appropriate because it answered his question. (*Id.*, ¶¶ 59, 61.) Kilmer also did not disregard Hawkinson's condition because even though he did not ask to be seen by nursing, Kilmer added his neck pain concerns to an already existing appointment with RN Henning on March 24, 2022 to address his neck pain. (*Id.*, ¶ 60.) Thus, Kilmer was not deliberately indifferent.

As to Hawkinson's November 4, 2022 HSR, Hawkinson asked why he had not received his epidural for pain. (*Id.*, ¶ 76.) Kilmer responded that an injection was ordered and pending scheduling because MPAA Mapes was still waiting to hear back from Bellin Hospital on their scheduling availability. (*Id.*, ¶¶ 76, 81.) At that time, only two weeks had passed since the offsite provider recommended an ESI. (*Id.*, ¶¶ 76, 73.) Thus, Kilmer's response was appropriate, and she did not disregard Hawkinson's medical condition.

Finally, to the extent Hawkinson alleges that Kilmer should have scheduled the appointment herself, Hawkinson's claim fails. Kilmer cannot schedule offsite appointments (*Id.*, ¶ 32), and thus cannot be deliberately indifferent "for failing to do something [she] had no authority to do," *Pegues* at *3 (citations omitted), or where

"the remedial step was not within [her] power." *See Miller* at 962. Hawkinson's Eighth Amendment claim against Kilmer must be dismissed.

## II. THE STATE DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.

Even if the Court were to decline summary judgment on the grounds argued above, the State Defendants are entitled to qualified immunity. "Qualified immunity protects government officials from damages liability 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Campbell v. Kallas*, 936 F.3d 536, 545 (7th Cir. 2019) (citation omitted). The test for qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distractions, and liability when they perform their duties reasonably." *Kemp v. Liebel*, 877 F.3d 346, 350 (7th Cir. 2017).

Although qualified immunity is "an affirmative defense," once it's raised, "the burden shifts to the plaintiff to defeat it." *Leiser v. Kloth*, 933 F.3d 696, 701 (7th Cir. 2019). To do so, a "plaintiff must show two elements: first, that the facts show 'a violation of a constitutional right,' and second, that the 'constitutional right was clearly established at the time of the alleged violation.'" *Id.* A court has "discretion to choose which of the elements to address first." *Id.*

The "clearly established" requirement is based on the "principle of fair notice." *Campbell*, 936 F.3d at 545. Clearly established thus "means that, at the time of the [official's] conduct, the law was "'sufficiently clear' that every 'reasonable official

would understand that what he is doing'" is unlawful." *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (citation omitted). "In other words, existing law must have placed the constitutionality of the [official's] conduct 'beyond debate.'" *Id.* (citation omitted).

A legal principle is beyond debate only when it has a "sufficiently clear foundation in then-existing precedent." *Wesby*, 138 S. Ct. at 589 (citation omitted). That means the "rule must be 'settled law,'" *i.e.*, "dictated by 'controlling authority' or 'a robust "consensus of cases of persuasive authority."'" *Id.* at 589–90 (citation omitted).

Given the "emphasis on notice, clearly established law cannot be framed at a 'high level of generality.'" *Campbell*, 936 F.3d at 545. To avoid generality, a court "must determine whether a right is clearly established 'in light of the specific context of the case, not as a broad general proposition.'" *Leiser*, 933 F.3d at 702. That requires a court to consider whether the law clearly prohibited "the [official's] conduct in the particular circumstances before him." *Wesby*, 138 S. Ct. at 590. Although a plaintiff need not point to a "a case 'on all fours' with the facts" presented, he must "show some settled authority that would have shown a reasonable" official in the same position that his or her "actions violated the Constitution." *Leiser*, 933 F.3d at 702; *see also Campbell*, 936 F.3d at 546 (noting that qualified immunity attaches when the legal principles have not "been applied in a factual context specific enough to provide fair notice to the defendants that their conduct was unconstitutional, regardless of whether the "broad principles" otherwise have "support in [the] caselaw").

In sum, the "demanding" qualified immunity standard "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Wesby*, 138 S. Ct. at 589 (citation omitted); *see also Campbell*, 936 F.3d at 546 ("The Supreme Court's message is unmistakable: Frame the constitutional right in terms granular enough to provide fair notice because qualified immunity 'protects all but the plainly incompetent or those who knowingly violate the law.'")

Here, the State Defendants are entitled to qualified immunity because there is no caselaw clearly establishing that the care Hawkinson received was constitutionally deficient. The opposite is true. There is caselaw that states that "a disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *See Pyles*, 771 F.3d at 409.

There is caselaw that "[f]or constitutional violations under § 1983, 'a government official "is only liable for his or her own misconduct"'" and therefore only liable if "she was personally involved in the constitutional violation." *Taylor v. Ways*, 999 F.3d 478, 493 (7th Cir. 2021) (quoted source omitted).

There is caselaw that inmate complaint examiners are entitled to defer to the expertise of prison medical officials in denying grievances, and dissatisfaction with the outcome of his grievance does not state a constitution violation. *See Burks*, 555 F.3d at 595.

There is caselaw that prison officials who are not medical professionals have no duty to intervene with a prescribed course of medical treatment and are "justified in believing that the prisoner [was] in capable hands." *Arnett*, 658 F.3d at 755.

Thus, the State Defendants are entitled to qualified immunity, and summary judgment in their favor is appropriate.

## CONCLUSION

For the reasons stated above, the Court should grant summary judgment to the State Defendants and dismiss the claims against them with prejudice.

Dated: June 3, 2025.

Respectfully submitted,

JOSHUA L. KAUL
Attorney General of Wisconsin

s/Pauline Toulouse
PAULINE TOULOUSE
Assistant Attorney General
State Bar #1087799

BRANDON T. FLUGAUR
Assistant Attorney General
State Bar #1074305

Attorneys for State Defendants

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 264-9451 (Toulouse)
(608) 266-1780 (Flugaur)
(608) 294-2907 (Fax)
toulousep@doj.state.wi.us
flugaurbt@doj.state.wi.us